CASE 44—LIBEL—October 2, 1883.

# Nix v. Caldwell.

APPEAL FROM SCOTT COMMON PLEAS COURT.

1. Upon a trial of R. before a lodge of Masons, appellant was called before a committee and testified. Appellee made an affidavit in reference to appellant's evidence, that he could not be believed on oath. Neither were members of the lodge.
2. *Held*—That appellee's affidavit cannot be regarded in law as a privileged communication.
3. Where the common protection of society requires that the communication should be made, if made in the absence of malice, it will be held to be privileged.
4. But although one honestly believes that his neighbor is not entitled to credit on oath, he will not be justified in publishing it to the world, however honest he may be in that belief.
5. Even in the administration of justice, where the witness is compelled to testify (and is not responsible if his statements are untrue unless guilty of perjury), he cannot be allowed in bad faith, with the knowledge that his answer is irrelevant to the question, to defame a party to the litigation.

6. The statute in regard to taxation of costs directs the clerk to tax the
allowance to witnesses, which the court may, by order, confine to not
exceeding two to any one point. It is for the court to exercise its
discretion in this regard.

GEO. C. DRANE FOR APPELLANT.

1. The affidavit of appellee is not a privileged communication. No person
has the right to voluntarily make such statements in regard to an-
other. The affidavit is not made in confidence in the discharge of
any duty, but voluntarily offered. (Falkard's Starkie on Slander,
secs. 688, 689; 16 N. Y., 373; 3 Johns., N. Y., 180; 15 Barb., 105; 23
Wend., 726; 8 Blackford, 157; 2 Bush, 568; Townshend on Slander,
secs. 233, 234.)
2. The court erred in overruling appellant's motion for an order instruct-
ing the clerk to tax not exceeding the costs of two witnesses for
appellee attending the trial or testifying by deposition. (Gen. Stat.,
ch. 26, sec. 32.)

SMITH & NEEDHAM FOR APPELLEE.

1. The allegations contained in the amended answer show that appellee's
affidavit was a privileged communication. Appellee, when called
upon by Redman and the committee trying his case, was under both
a moral and social obligation to give the information contained in
his affidavit. (Odgers on Libel and Slander, 1 Am. ed., 196-'7-'8,
203-'4; Starkie on Slander, 292; Harper v. Harper, 10 Bush, 455;
Lucas v. Case, 9 Bush, 302; Hilliard on Torts, 329, 317; 16 N. Y.,
374; 5 Cash, 412; York v. Johnson, 116 Mass.; Hart v. Reed, 1 B.
Mon., 166; Greenleaf on Ev., volume 2, 421; Wilhoit v. Hancock, 1
Bush, 368; Herily v. Blackburn, 1 Dana, 4; Curd v. Lewis, 1 Dana,
352; Hercheral v. Ambler, 4 Dana, 168; Civil Code, sec. 134.)
2. The motion of appellant for an order to instruct the clerk, in taxing
costs, not to tax exceeding two witnesses for appellee attending the
trial, was properly overruled. (Gen. Stat., ch. 26, sec. 32.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

This action was instituted in the Grant circuit, and by
change of venue heard in the Scott circuit. It was brought
by the appellant Nix, against the appellee Caldwell, for an
alleged libel published by the latter, affecting injuriously the
character of the appellant. The libel was in the form of an
affidavit, voluntarily given by the appellee, at the instance
of a member of the Stewartsville Lodge of Masons, to be
read on the trial of one of its members.

The accusation pending was against one Redman, and the appellant (plaintiff below) had testified before a committee of the lodge with reference to the charge, and the appellee, at the request of the party on trial, as well as a committee of the lodge, was sworn by a justice of the peace, and made an affidavit under his signature, in substance, "that the appellant was a man of bad character, and so regarded by his neighbors, and he would not believe him on oath."

The appellee pleads—

*First.* That what he stated was then and is now true.

*Second.* That the affidavit was made in good faith, believing the same to be true, and without malice, or any intention on his part to injure the plaintiff, but for no other purpose than to give to the lodge the information he thought, in good faith, he had of and concerning the appellant's character, all of which was done in a prudent and confidential manner, without malice, and in the discharge of a social and moral duty, &c.

The appellant and the appellee were not members of the lodge, and, so far as the record shows, were not members of the order.

The appellant objected to the filing of the amended answer containing the second ground of defense, and also objected to an instruction embodying the legal proposition presented by the amended answer; but his objections were overruled, a trial had, resulting in a verdict and judgment for the defendant (appellee).

The court, in the instruction, said, in substance, to the jury "that if the defendant, at the time he gave the affidavit, testified in good faith, and to what he believed to be true concerning the plaintiff's character, and without any

intention to injure the plaintiff, the publication complained of was privileged and excusable in law.

The words published were actionable, and if the defense in the amended answer brings the case within the rule of privileged communications, then, before the appellant can recover, although the words published may be untrue, he must show the existence of express malice.

The rule laid down in Townshend to the effect that "every one who believes himself to be possessed of knowledge, which, if true, does or may affect the rights and interests of another, has the right, in good faith, to communicate such, his belief, to that other, and whether or not he has personally any interest in the subject-matter of the communication," is certainly very broad and comprehensive in its meaning, but certainly cannot apply to the character of case being considered. It is also said by Starkie that "communications made in confidence to persons interested, or by those interested, supposing them to be true, will relieve the party making them from responsibility, in the absence of express malice." (1st Starkie on Slander, 321.)

This doctrine applies to cases which, where the parties, by reason of their relation to each other, are interested in the subject-matter of inquiry, such as communications made by the agent to the principal, the father to the son, or communications by one stranger to another upon inquiry as to the standing of those who are seeking places of trust or confidence; such are regarded, when made in good faith, as privileged, and so in cases where the well-being of society requires that a party in possession of what he supposes to be facts, should disclose them. The authorities, however, are conflicting as to the responsibility of a stranger making a communication to another where there is no com-

Nix v. Caldwell.

mon interest in the subject-matter, and the interest is confined solely to the party receiving the communication.

In the cases of Coxhead v. Richards, and Bennett v. Deacon, 2 Mann.. & G., R. & Scott, the court was equally divided on the question as to whether a stranger could volunteer to give the information. See also Lewis & Herrick v. Chapman, 16 New York.

It is well settled, where the common protection and welfare of society requires that the communication should be ma le, that when made, if in the absence of actual malice, it must be regarded as privileged; but we find no case going to the extent of adjudging that the belief of one as to the standing of another for truth and veracity with his neighbors, however honest the conviction, will justify a publication to the world that the man's reputation is of such a character as he ought not to be believed on oath, and although untrue, is excusable in law if the publication was in good faith. In the administration of justice, where the witness is compelled to testify, and not responsible, even if his statements are untrue, unless guilty of perjury, he is not allowed, in bad faith, and with a knowledge that his answer is not relevant to the questions at issue, to defame or malign a party to the litigation, and when he does so, the law ceases to protect him.

While the rule laid down by Mr. Townshend seems so broad as scarcely to admit of an exception, where good faith prompts the disclosure, this same author, after establishing the rule, says that "the publication of defamatory matter is not privileged because made at a public meeting, unless pertinent to the matter in hand, and when spoken in the exercise of duties required to be performed." Also, "a complaint to a church against one of its members by

one who is not a member is not privileged ; neither would such a complaint by a member against one who is not a member be privileged." (Sections 234, 235, 2d edition, Townshend on Slander.) One who is not a member of a church making a complaint against one who is, might well maintain, as has been done in this case, that it was to the interest of the society to which the injured member belonged that his reputation as a man and Christian should be known, and that, making the complaint in good faith, he is in law excusable.

The elementary books on the subject have not carried the doctrine so far as this, notwithstanding the broad rule established for the protection of those who deem it a duty to speak or publish defamatory matter·of their neighbors, and who, when making the publication, may have acted in good faith. In the present case the appellant and appellee were strangers to the lodge, and the latter saw proper, when he was not involved in the trial of Redman, who was a member, to sign and swear to a writing that was not only injurious, if untrue, to the character of the appellant, but was signed for the purpose of being read in the lodge to show that appellant could not be believed on oath. If Nix, who was not a member of the lodge, had uttered or published defamatory matter of the member being tried according to the rule laid down in both Starkie and Townshend, he would have subjected himself to an action for damages.

The appellant's character was to be discussed upon the affidavit of the appellee at a meeting where the appellant could not, or at least had no right to be heard, and the result determined without an opportunity for defense, and doubtless adverse to the good standing of the appellant, as

Nix v. Caldwell.

appellee's testimony, in the absence of conflicting proof, would doubtless have controlled the action of the lodge.

In the case of Coombs v. Ware, 8 Blackford, Ind., it was held that "words spoken or written in the regular course of church discipline to or of members of the church are, as among the members themselves, privileged communications, and not actionable unless express malice appears; but an accusation made by a member of the church on such occasion against one not a member is not, as to him, a privileged communication. It is "obvious that, to extend the rule so as to apply it to strangers, may sometimes cause irreparable injury to the character of innocent persons." It results, therefore, that the court below erred in permitting the amended answer to be filed, and in instructing the jury, in substance, that the facts therein stated presented a defense to the action." (See Lucas v. Case, 9 Bush; Fairs v. Stark 9 Dana; Harper v. Harper, 10 Bush.)

This ruling avoids the necessity of disposing of the other questions made as to the incompetency of the testimony, as the interviews between appellee and the members of the lodge, or the committee, in the absence of appellant, were, in the views of counsel, necessary to make out the defense embodied in the amended answer.

Many witnesses were examined on both sides of the case, and the counsel for appellant moved the court to confine the allowance of costs as against him to two witnesses on the side of the defense to any one point, and this was refused. The statute in regard to the taxation of costs directs the clerk "to tax the allowance to witnesses, which the court may, by order, confine to not exceeding two to any one point." The court must exercise its discretion in such a case, and may allow the per diem to more than two wit-

nesses to a point when proper to do so.    We perceive no abuse of discretion on the part of the court in refusing to confine the allowance as asked by appellant's counsel.

The judgment below is reversed, with directions to sustain the objections to the filing of the amended answer, and to award the appellant a new trial, and for further proceedings consistent with this opinion.