Stewart v. Hall, &c.

---

CASE 55—PETITION ORDINARY—NOVEMBER 14.

## Stewart v. Hall, &c.

APPEAL FROM JEFFERSON CIRCUIT COURT.

1. LIBEL—PRIVILEGED WORDS.—In an action for libel, if the words charged were spoken on an occasion which renders them *prima facie* privileged, the burden is on the plaintiff to show express malice.

2. WORDS SPOKEN IN A JUDICIAL PROCEEDING, whether by a party, by a witness, or by counsel, are *prima facie* privileged.

3. CASE ADJUDGED.—The defendant in an action, in giving his deposition, was cross-examined by counsel for plaintiff as to a newspaper publication, which contained a libel upon the defendant, and this publication, having thus become a part of the testimony, was re-published by counsel for plaintiff in his printed brief. Upon final hearing, the publication was excluded as being incompetent. This is an action by the defendant in that action against the plaintiff and his counsel for libel. *Held*—That neither is liable, as they had reasonable ground to believe that the publication was competent testimony, and there is nothing tending to show that they did not so believe.

M. A. & D. A. SACHS FOR APPELLANT.

1. What a witness says must be pertinent, or believed so by him, in order to be privileged. (White v. Nichols, 3 How., 266; White v. Carroll, 42 N. Y., 161; Barnes v. McCrate, 32 Maine, 442; Hawkins v. Summer, 13 Wis., 193; McLaughlin v. Cowley, 127 Mass., 316; Story v. Wallace, 60 Ill., 51; Morgan v. Booth, 13 Bush, 480; Forbes v. Johnston, 11 B. Mon., 51; Thom v. Blanchard, 5 Johns., 523; Elam v. Badger, 23 Ill., 498; Gilbert v. People, 1 Denio, 41; Odgers on Libel and Slander, side pages 266, 268, 269; R. v. Lord Abbington, 1 Esp., 226; R. v. Creery, 1 M. & S., 273.)

Stewart v. Hall, &c.

2. Where the occasion renders the publication privileged, the jury may take the language into consideration to determine the intent. (Townshend on Slander and Libel, sections 244b, 288, 388, 399; 19 Md., 450.)

3. Whenever there is evidence of malice, either extrinsic or intrinsic, in answer to the immunity claimed by reason of the occasion, a question arises which the jury, and the jury *alone*, ought to determine. (Addison on Torts, section 1169; Campbell v. Gray, 5 Ky. Law Rep., 240; Nix v. Caldwell, *Ibid.*, 275.)

WALTER EVANS FOR APPELLEES.

1. The alleged defamatory matter having been published in the course of a judicial proceeding, to-wit: In the brief of counsel, furnished to the court, pursuant to its rules, it was *absolutely* privileged. (Odgers on Libel and Slander, side pages 182, 183, 184 and 186.)

2. If not *absolutely* privileged, the manner and occasion of its publication show it to be privileged, unless it is alleged and proved by the plaintiff that there was express malice, and that the publication was made in bad faith, wantonly and needlessly, and as a mere cover to an attack upon plaintiff's character. (Odgers on Slander and Libel, side pages 183, 184, 190, 196 and 197; Forbes v. Johnson, 11 B. M., 51; Townshend on Slander and Libel, section 209 and note, 224 and note, 224a and note, and sections 225 and 226.)

3. The burden of proof is upon the plaintiff to show this express malice. (Odgers on Slander and Libel, side page 269; Harper v. Harper, 10 Bush, 455.)

4. When the facts are ascertained, the judge is to decide whether the publication is privileged. (Odgers on Slander and Libel, side page 185.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

The property of the Jeffersonville and Fifteenth Street Christian Church, in Louisville, having been sold for the payment of certain liens, there remained after their payment a considerable fund, which was claimed by each of the two parties then existing by reason of a division in the church. An action was brought in the Louisville Chancery Court of the style of Smith, &c., v. Hagerman, &c., to settle the right to it. The prime cause of the

division was the election of the appellant, W. W.
Stewart, to an eldership in the church, and his
subsequent removal upon the alleged ground that
he was "not of good report." It was claimed by
the Stewart or "Hagerman party," that the "Hall-
Skene party" had, by the adoption of what the
former denominated "a creed," dissolved their rela-
tion with the church, as it recognized no guide in
religious matters save the Bible.   Upon the other
hand, the Hall-Skene party said that they had only
adopted rules of church discipline, and that the
other party had voluntarily abandoned the church,
owing to its action as to Stewart.   The question of
whether a "schism" existed within the meaning of
the statute, which regulates the property rights of
the parties in such a case, was involved, and each
side, therefore, proceeded to take testimony as to
the division, and the causes which had led to it.
The deposition of the appellant, Stewart, was taken
upon the part of the defendants, he testifying at
length as to the matters involved, and upon his
cross-examination a printed article, which reads
thus, and which had been published in the Christian
Standard or the American Christian Review, or per-
haps in both, was presented to him, and he was
asked by the appellee Evans, who was the counsel
for the plaintiffs in the suit (the appellees, Hall and
Skene, who were plaintiffs in the suit, also being
present), whether he was the same person named in
it, and he was then examined as to the matters
mentioned in it:

"*To whom it may concern:* Wm. W. Stewart and

his wife Margaret, from Edinburgh, Scotland, were separated from the First Church of Christ, in this city, for gross dishonesty, about six months ago, since which time they and their family, consisting of a daughter about twenty years of age, three sons, aged respectively about eight, thirteen and fifteen years of age, have gone South. When last heard from, they were at Atlanta, Ga., purposing to go to Montgomery, Ala. From the last number of the 'Standard,' it appears that he or they are now in Texas. When they came here, about twelve years since, he had the assumed name of Henderson, and, as it now appears, they have long been living on others. That they will continue to do so as far as they can there is little doubt. He was in the boot and shoe business here, and failed or compromised every two or three years, in the meantime borrowing wherever he could get money, or indorsements to raise it, and finally left them to pay his debts as best they could. He is of quiet, pleasant demeanor, of steady habits, and religious; withal, is very apt to make friends, perchance victims. It is deemed an act of simple justice that our generous-hearted brethren should be placed on their guard.

"Done by order of the Church.

"J. M. L. CAMPBELL, Church Clerk.

"Detroit, January 20, 1871."

It is the practice, and perhaps a rule, of the court in which the suit was pending to require the parties to file briefs before the hearing, and the case having been argued, the appellee Evans' argument was printed by and at the cost of one who was in-

terested in the case, but is not a party to this action, and filed as the brief in the case. In the discussion he had referred to and quoted said printed article, it being then a part of the testimony (although subsequently, and by the final judgment, it was stricken out of the record, and excluded as incompetent evidence), and hence it was re-published in the brief.

The appellant, Stewart, then brought this action for libel against the appellees, E. G. Hall, Wm. Skene and Walter Evans, basing it both upon the publication by them of said article when his deposition was taken and the printing of it in the brief.

The appellees denied that they were actuated by malice toward the appellant, and in their answers set forth in detail the circumstances of the publication; that they acted in good faith, and believed, even if it were not, that the alleged libel was pertinent, and material evidence for them.

Malice not being implied from the publication, owing to the occasion and circumstances under which it was made, the appellant attempted to show express malice upon the part of the appellees toward him, by proving what had taken place or been said by them in the business or regular governmental meetings of the church. This evidence, however, only tended to show that two of the appellees had been present at said meetings, and that one, or perhaps both, of them had taken a part in the discussion relating to the appellant as an elder, and in deposing him from his office; and at the close of the plaintiff's testimony the court, upon the motion of the defendants, instructed the jury to find for them.

The essence of libel is malice. The mind must be at fault. If the language is actionable, then the publication is presumed to have been malicious,. unless the occasion rendered it *prima facie* privileged. If so, then the legal effect of privilege is to rebut the legal inference of malice arising from the words, and the burden of proving malice in fact, or express malice, is then upon the plaintiff, and this. is not shown by the mere falsity of the publication,. in the absence of evidence that the publisher knew it to be false.

It was said in the case of Morgan v. Booth, 13. Bush, 480: "A party to a judicial proceeding may,. by himself or counsel, write or say any thing of and concerning the case, or of a witness who testifies in the case, that is pertinent and material to the matter in controversy, and he can not be held to answer for scandalous words, unless, under the pretense of pleading his cause, he designedly wanders from the point in question, and maliciously heaps slander upon the party whose conduct or evidence is under consideration; and so long as it can be said that such party confines himself to that which is pertinent and material, he is under no obligation to show that his words are absolutely true, and can not be made to answer for maliciously saying that which the law permits him to say.

The ends of justice require that there should be a free resort to judicial tribunals. Public policy dictates that a man should not be hampered in the prosecution or defense of his rights by the fear of actions for libel or slander. If, however, he abuses.

this right by needlessly using it as a cloak to conceal his private malice, and acts from a wrong motive, then he should be held responsible. It is only privileged for some reason, and the occasion must be used for that reason.

The law only requires, however, good faith, and not infallible judgment; and the rule is the same as to a party to a suit, witness and counsel; and also whether the words be spoken or published in a strictly judicial preceeding or one *quasi* judicial, like the proceedings of and between the members of a church to enforce its discipline. (Townshend on Slander and Libel, section 233; Lucas v. Case, &c., 9 Bush, 296; Nix v. Caldwell, 81 Ky. Rep., 293.)

It is urged, however, that the article in question was not pertinent or material to the case, and that this fact was conclusively settled by the judgment of the court excluding it. This was not done, however, until the final judgment in the action was rendered. Great latitude is permissible upon a cross-examination. Its object is to enable the jury or court to understand the witness, and give to his testimony the proper weight. A question not strictly relevant, but which is collateral, may be asked him in order to show that he has, by some disgraceful conduct, rendered himself less credible, or to fix his identity and antecedents. It is unnecessary, however, to decide whether the article in question was competent testimony. There is no evidence in the record even tending to show that the appellees did not so believe; and as the questions at issue involved the causes of the division in the church, they had reasonable cause

to so believe. In fact, it is alleged in the pleadings. of the appellees, and not denied, that they did so believe.

Whether words, otherwise actionable, are privileged is a question of law for the decision of the court, depending upon the circumstances of their utterance or publication, and when ascertained to be so, then the question of good faith in their use arises, and the existence of malice may be shown by evidence *aliunde;* but whether any malice has been thus. shown, or whether it arises intrinsically from the publication itself, or whether it has been made to appear in either way, is a question for the determination of the court. In this instance the defendants. did not originate the publication, and there is no evidence of any personal hostility. It is only said that the appellees "in a congregational capacity" showed bitterness. Even the appellant did not testify to any statement or particular fact showing it, but, in substance, only gives his opinion when he says that, from their conduct, they wished to degrade him, because he does not state in what the conduct consisted.

It was held in the leading case of Hodgson v. Scarlett, 1 B. & A., 245, that if the alleged libelous. words are published in a judicial proceeding, with probable cause and without express malice, that they are privileged. The implication of malice or a bad motive, which would arise ordinarily from the use of the words, being rebutted by the occasion, its. existence must be shown by extrinsic evidence, and if the party using them was not actuated by malice,.

but in good faith believed that they were material in the case, and the attending circumstances justified the belief, then he is not liable. If, under all the circumstances, he may deem the statement reasonably necessary to his cause, and there is an absence of malice as a cloak for defamation, then public policy requires that he should not be held liable, even if the statement be untrue, and although the other party thereby suffers in reputation. We think this is the correct rule, and that it is sustained by both reason and authority. The line which separates relevant from irrelevant testimony is often quite shadowy and indistinct, "and the position of counsel or parties conducting a cause would be full of peril if the imputation of legal malice was incurred whenever, from ignorance of law or frailty of judgment, criminatory remarks of an irrelevant character might be made." (Allen v. Crowfoot, 2 Wend., 515; Lea v. White, 4 Sneed, 111; Vausse v. Lee, 1 Hill (S. C.), 197; Lawson v. Hicks, 38 Ala., 279; Townshend on Slander and Libel, section 224.)

The publication in the brief was, so far as the attorney is concerned, in discharge of his duty; and as to all three of the appellees, it was in defense of their rights. It was only a fair report of what occurred in a judicial proceeding, and is privileged, because the interests of the public so require. As the appellees did not originate the alleged libelous article, it can not, in view of the occasion, be claimed that there was intrinsic malice shown by it as to them, and we have already seen that there was no extrinsic evidence of it, and the non-suit was, therefore, properly ordered.

Judgment affirmed.