CASE 29.—ACTION BY MATTIE THOMPSON AGAINST J. C. B. SEBREE FOR SLANDER.—June 19.

## Sebree v. Thompson.

126  223
f126  322

126  223
f135  215

Appeal from Scott Circuit Court.

R. L. STOUT, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Reversed.

1. Slander—Absolute Privilege—Judicial Proceedings.—A witness while testifying under oath in a court of justice is not subject to prosecution for slander for any statement that he may make upon the subject under consideration.

2. Same—Question of Law.—Whether words otherwise actionable as defamatory are privileged is a question of law for the decision of the court, depending upon the circumstances of their utterance ·or publication.

J. C. B. SEBREE for appellant.

### AUTHORITIES CITED.

Morgan v. Booth, 13 Bush, 480; Louisville Printing Co. v. Tennelly, 105 Ky., 365; Stewart v. Hall, etc., 83 Ky., —; Tygret v.

Potter & Co., 97 Ky., 54; Rue v. Dale, 107 Ill., 275; Fourth Kent. Star, p. 144.

V. F. BRADLEY & SON and FINNELL & FINNELL for appellee.

### AUTHORITIES CITED.

Am. & Eng. Ency. of Law, vol. 18, 2d ed., p. 1026: 6 Am. State Rep., 821; 104 Ky., 695; 13· Bush, 482; 93 Ky., 424; 24 Ky. Law Rep., 1904.

OPINION OF THE COURT BY JUDGE LASSING—Reversing.

Appellees, Mattie Thompson and husband, Frank Thompson, instituted an equity suit in the Scott circuit court against appellant, J. C. B. Sebree, wherein they sought to have a deed, absolute on its face, adjudged to be a mortgage, and also to have certain questions of account between themselves and appellant settled and adjusted. During the preparation of this equity suit for trial, and after the appellees had both testified, appellant was called and testified for himself as a witness in said case. During the progress of his testimony he made of and concerning the appellees the following statement: ''The allegation in the plaintiff's petition that there was a contract between the plaintiffs and the defendant made at the time of the execution or delivery of it (the deed) or as part of it is untrue, and known to the plaintiffs (Thompson and wife) to be untrue at the time they made the statement and swore to the petition.'' Also the following: ''The allegation in the petition of plaintiffs that the deed executed by the plaintiffs was intended to be a mortgage to secure $1,215 or any other sum, is false, and known to both the plaintiffs, at the time they swore to that petition, to be false.'' Also the follow-

ing: "The statement that plaintiffs tendered the defendant any money or stated to defendant that they were ready to settle with him, and that there was an open account between plaintiffs and defendant for board, or anything, is false, and known to them to be false at the time they were sworn to the petition." Also the following: "The idea of his going there pursuant to any contract with plaintiffs or either of them made in January, or any other time, is absolutely false, and known by plaintiffs to be false at the time they so swore." Also the following: "The plaintiff's statement that they fed that cow a stalk of fodder of their own, or bought any, or anything else, is absolutely false and untrue, and known to them to be untrue at the time they so swore." Thereafter Mattie Thompson filed suit in the Scott circuit court against J. C. B. Sebree, seeking to recover from him the sum of $5,000 because of the speaking of the words above given of and concerning her, alleging that each and all of the statements were slanderous, and were made for the purpose of injuring her good name and reputation. The defendant admitted the speaking of the words, and alleged that they were true or substantially true, and for further defense pleaded that the statements were made and the words spoken by him while he was giving his deposition in a legal proceeding between himself and plaintiff after he had been sworn; that the matter about which he was testifying and concerning which he made the alleged slanderous statements was fully set out in plaintiff's pleading, and that his answers were responsive and pertinent to the questions at issue in the equity suit between himself and plaintiff's; that he believed that his answers were material and necessary to his defense; and that they were made for the purpose of

presenting his defense, and without any desire or
intention to injure plaintiff or her character in any
way. The material allegations of the answer were
traversed in the reply. On the issue thus joined, the
case was submitted to a jury, who returned a verdict
in favor of plaintiff for $1,000. Because of certain
alleged errors during the progress of the trial, the
defendant, Sebree, prosecutes this appeal.

The only question which we deem it necessary to
determine is: Were the words spoken by appellant
actionable, or, rather, was the occasion upon which
these words were spoken what is known as a 'privi-
leged occasion''? The rule is well settled that in
actions for libel or slander the defendant is permitted
to show, if he can, that the circumstances under which
the words charged were spoken were such as to pro-
tect him from liability for what would otherwise be
an actionable wrong. There are occasions when for
the public good and in the interests of society one is
freed from liability that would otherwise be imposed
upon him by reason of the publication of defamatory
matter, and these occasions are called ''privileged
occasions.'' Such occasions are divided into two
classes by the text-writers: Those known as ''abso-
lutely privileged,'' and those ''conditionally privi-
leged.'' Words spoken upon an occasion ''absolutely
privileged though spoken falsely, knowingly, and with
express malice, impose no liability for damages in
an action for slander or libel, while, on the other hand,
words spoken upon an occasion only ''conditionally
privileged'' impose such liability if spoken malic-
iously or not in good faith; the difference between
the two being that in the former case the freedom from
liability is absolute and without condition, while in
the latter case it is made to depend upon the absence

of express malice. The decisions of courts of last resort, while in perfect harmony and accord as to these two classifications, vary materially in the arranging and grouping of the occasions that may be termed "absolutely privileged" and those "conditionally privileged;" some courts holding that the proceedings in a court of justice are "absolutely privileged," while others hold that they are only conditionally so. In England all proceedings before a court of justice are held to be "absolutely privileged," and this rule applies alike to judges, litigants, their counsel and to witnesses. The English rule has been adopted and followed with approval in many of the state courts, while in many other state courts proceedings in a court of justice are held to be "privileged" only so far as they are applicable and pertinent to the subject of injury, and are therefore "conditionally privileged."

Our court has not passed upon this direct question, although in the case of Gaines v. Aetna Insurance Co., 104 Ky. 696, 20 Ky. Law Rep. 86, 47 S. W. 884, in passing upon the sufficiency of a petition wherein the plaintiff sought to recover of the defendant because of certain alleged libelous matter set up in an answer in a former suit between plaintiff and defendant, this court said that the alleged libelous matter was "privileged," although the party making such allegations acted in bad faith, and knew at the time they were made, and before, that they were false, and without color of truth or probability, and that they were made in order to defame, injure, and ruin the plaintiff about whom they were spoken; for, said the court: "The paragraph of the answer objected to as libelous was certainly pertinent and relevant to the defense presented by appellee to that action, and though the

allegations be untrue and were known to be untrue
when made, and also conceding that they were made
with bad motives, still, for obvious grounds of pub-
lic policy, no action will lie therefor. * * * We know
of no court holding that a party is liable for damages
caused by a vexatious and spurious defense, even
though it be for delay merely, to just demand. If the
defense be pertinent and relevant, and one permitted
by law, a party has a right to make it, without sub-
jecting himself to an action for libel if he fails to
maintain it. This is 'absolutely privileged.'" The
rule thus announced by this court is rather in support
of the English doctrine, which holds that proceedings
in a court of justice are "absolutely privileged," for
the court said that in the presentation of such defense
as he desired to make, even though made with the
knowledge that it was false, and for the express pur-
pose of injuring and defaming another, yet the
pleader was protected by the "absolute privilege" of
the occasion; the question of good faith not entering
into the consideration at all, and the pleader being left
to his own choice in the selection of language in which
to clothe his thought. This rule is supported by the
text-writers. Townsend on Slander & Libel, section
221, says: "Whatever one may allege in his pleading
by way of defense to the charge brought against him,
or by way of countercharge, counterclaim, or set-off,
can never give a right of action for libel." And,
although there is some authority to the contrary, con-
tinuing, the author says: "We believe the better and
prevailing opinion to be that for any defamatory mat-
ter contained in a pleading in a court of civil juris-
diction no action for libel can be maintained." And
this doctrine is supported by Odger in his work on
Libel and Slander. In Cooley on Torts, section 251,

the rule is thus stated: "Pertinent matter in pleadings, motions, affidavits, and other papers, in any judicial proceeding is absolutely privileged. though false and malicious, and, in determining whether matter is pertinent or not, the court will indulge in no strained, technical, or close construction to deprive the defendant of the protection of privilege." The same rule which applies to pleadings is applied to the privilege accorded witnesses in judicial proceedings; in fact, in some of the text-books the question of privilege is rather extended in favor of the witnesses, for, as said by Townsend: "The due administration of justice requires that a witness should speak according to his belief the truth, the whole truth, and nothing but the truth, without regard to the consequences; and he should be encouraged to do this by the consciousness that, except for any wilfully false statement, which is perjury, no matter that his testimony may, in fact, be untrue, or that loss to another ensues by reason of his testimony, no action for slander can be maintained against him. It is not simply a matter between individuals; it concerns the administration of justice. The witness speaks in the hearing and under the control of the court, is compelled to speak with no right to decide what is immaterial, and he should not be subject to the possibility of an action for his words." In Starkie on Slander, 242, it is said: "Witnesses, like jurors, appear in court in obedience to the authority of the law, and therefore may be considered, as well as jurors, to be acting in the discharge of a public duty; and, though convenience requires that they should be liable to a prosecution for perjury committed in the course of their evidence, or for conspiracy in case of a combination of two or more to give false evidence, they are not responsible

in a civil action for any reflections thrown out in delivering their testimony." Cooley on Constitutional Limitations (7th Ed.) p. 629, says: "Among the cases which are so absolutely privileged on reason of public policy that no inquiry into motives is permitted in an action for slander or libel is that of a witness giving evidence in the course of judicial proceedings. It is familiar law that no action will lie against him at the suit of a party aggrieved by his false testimony, even though malice be charged." The remedy for a dishonest witness is limited to the criminal prosecution for perjury.

In the case of Hunckel v. Voneiff, 69 Md. 179, 14 Atl. 500, 17 Atl. 1056, 9 Am. St. Rep. 413, Justice Miller, in a most thorough and exhaustive opinion, in which all the authorities of the English and American courts are reviewed, cites with approval the case of Munster v. Lamb, L. R. 11, Q. B. Div. 588, in the English Court of Appeals, in which the judges said: "Why should a witness be able to avail himself of his position in the box, and to make, without fear of civil consequences, a false statement, which, in many cases, is perjured, and which is malicious and affects the character of another? The rule of law exists, not because the conduct of those persons ought not of itself to be actionable, but because, if their conduct was actionable, actions would be brought against judges and witnesses in cases in which they had not spoken with malice, in which they had not spoken with falsehood. It is not a desire to prevent actions from being brought in cases where they ought to be maintained that has led to the adoption of the present rule of law; but it is the fear that, if the rule were otherwise, numerous actions would be brought against persons who were merely discharging their

duty. It must be borne in mind that it is not intended to protect malicious and untruthful persons, but that it is intended to protect persons acting bona fide, who, under a different rule, would be liable, not perhaps to verdicts and judgments against them, but to the vexation of defending actions.'' And, continuing, the court adopts with approval the rule of ''absolute privilege,'' on the ground that a sound public policy demands that ''it is of the greatest importance to the administration of justice that witnesses should go upon tne stand with their minds absolutely free from apprehension, that they may subject themselves to an action for slander for what they may say in giving their testimony.'' The rule thus adopted by the Supreme Court of Maryland is, as we above said, the English rule, and is in harmony with the decisions of many state courts of last resort; and while, as we have heretofore stated, a contrary rule has been announced and followed in many of the states, yet we believe that under the English rule the ends of justice are more nearly subserved. In the case of Stewart v. Hall, etc., 83 Ky. 375, 7 Ky. L. R. 323, this court held: ''That whether words otherwise actionable are privileged is a question of law for the decision of the court, depending upon the circumstances of their utterance or publication.''

This being true, the court should not have submitted to the jury in this case the question as to whether or not the words used, and which are the basis of this litigation, were privileged, but upon demurrer to the petition should have determined this question. Appellee had alleged in her petition in the equity suit that she had made a certain contract with appellant; that he was indebted to her on account for board and other items set up in her petition. The appellant had answered, denying each and all of the allegations of

appellee's petition. Appellee and her husband had both testified in the case, and their testimony had tended to support the allegations of her petition, and it was after appellant had been sworn as a witness, and while being examined as such, that he made the statements which are the basis of this litigation. Each answer shows for itself that it is responsive to some allegation of the petition, or some statement made by appellee during her examination as a witness. It is true appellant in testifying might have contented himself with a bare denial of the facts alleged in the petition, or of the statements made by appellee, but he was not confined in his testimony to so doing. He was left, as the text-writers all agree he should have been, free to express himself in language which to him seemed to appropriately respond to the allegation, or to refute the testimony of his adversary. He was testifying of and concerning transactions alleged to have taken place between himself and appellee. He was his own and only counsel. He was asking and answering the questions for himself as a witness, and it is readily seen that he was attempting to make his answer most positive and emphatic. He not only denied in terms the allegations and the statements, but he went further, and in each instance said that at the time the allegations were made and sworn to by appellee she knew them to be untrue and false. If they were false, they being transactions between himself and appellee, we cannot escape the conclusion that she must have known they were false; and, without passing upon that question, if he believed that she did know they were false when she made and swore to the allegations in her pleading, or when she testified to facts, under oath, tending to support them, he had the right to believe that it was not only

pertinent, but material, for him to so state, and, even under the modified rule, as adopted by those states which hold that proceedings in a court of justice are privileged only when they are pertinent and relevant, appellant was entitled to the protection of privilege. Mr. Cooley on Torts, p. 427, quoting from Chief Justice Shaw, says: "In determining what is pertinent, much latitude must be allowed to the judgment and discretion of those who are intrusted with the conduct of a case in court, and a much larger allowance made for the ardent and excited feelings with which a party or counsel who naturally and almost necessarily identifies himself with his client may become animated by constantly regarding one side only of an interesting and animated controversy, in which the dearest rights of such party may become involved. And if these feelings sometimes manifest themselves in strong invectives, or exaggerated expressions, beyond what the occasion would strictly justify, it is to be recollected that this is said to a judge who hears both sides, in whose mind the exaggerated statements may be at once controlled and met by evidence and argument of a contrary tendency from the other party, and who, from the impartiality of his position, will naturally give to an exaggerated assertion, not warranted by the ocassion, no more weight than it deserves.   Still this privilege must be restrained by some limit, and we consider that limit to be this: That a party or counsel shall not avail himself of his situation to gratify private malice by uttering slanderous expressions, either against a party, witness, or third person, which have no relation to the cause or subject-matter of the inquiry.   Subject to this restriction, it is, on the whole, for the public interest, and best calculated to subserve the purposes of justice, to

allow counsel full freedom of speech in conducting the cases and advocating and sustaining the rights of their constituents; and this freedom of discussion ought not to be impaired by numerous and refined distinctions.''

The same rule of law that would protect an attorney in the presentation of his client's case to a court or jury applies with equal, if not greater, force to the protection of a witness when testifying under oath, and there is as much, if not more, reason for the rule in a case like the one at bar, where the party testifying is at once counsel, client, and witness. He confined himself strictly to a consideration of the questions involved in the allegations. The complaint made by appellee is not that he wandered from the subject, but that he expressed himself in terms more forcible than he had a right to do. To this conclusion we cannot agree. She had said that the statements and allegations in her pleadings, and as given in her testimony, were true. He said that they were not true, and that from the very nature of the transactions she must have of necessity known that they were not true when she so stated and swore. Even though these statements had been made by appellant maliciously, yet, if when he made them he believed them to be true, it cannot be said that they are neither relevant nor pertinent, and hence under no rule of procedure in force in any of the courts could he be held to be answerable therefor, much less under the rule which appears to us to be most equitable and just, as tending to secure the best interests of society and to serve the ends of justice, to-wit, that a witness while testifying under oath in a court of justice is not subject to prosecution for libel or slander for any statement that he may make upon the subject under con-

sideration.   The case of Morgan v. Booth, 76 Ky. 482, relied upon by appellee, is not applicable to the case at bar, for the reason that the party in that case, who was charged with having uttered the slanderous words, was at the time of their utterance not testifying, but they were injected into the trial while another witness was upon the stand, and were in reference to the testimony which the said witness was then giving, and hence were, of course, not privileged under either rule.

The trial court should have sustained the demurrer to the petition.   The cause is reversed and remanded, with instructions so to do.