Drew W. SMITH, Appellant,

v.

Carol Ann HODGES, Appellee.

No. 2005–CA–000057–MR.

Court of Appeals of Kentucky.

Nov. 23, 2005.

Discretionary Review Denied by
Supreme Court Aug. 17, 2006.

David W. Hemminger, Louisville, KY,
for Appellant.

David B. Mour, Louisville, KY, for Appellee.

Before GUIDUGLI and MINTON, Judges; ROSENBLUM, Senior Judge.[1]

## OPINION

GUIDUGLI, Judge.

This case involves the application of the absolute privilege afforded to defamatory statements made by a witness in the course of a judicial proceeding. Having determined that Kentucky still follows the American Rule and that the statements at issue were relevant and pertinent to the subject of inquiry, we affirm.

On March 29, 2004, Drew W. Smith, the President and CEO of Bob Smith Chevrolet, Inc., filed suit against the company's former finance manager, Carol Ann Hodges, seeking damages for slander based upon statements she made in a deposition taken in a federal lawsuit. Customer Christopher Neil Smith had filed suit against Smith Chevrolet in the U.S. District Court for the Western District of Kentucky, alleging a negligent and willful violation of the federal Fair Credit Reporting Act[2] (hereinafter "FCRA") as well as a violation of his privacy when Smith Chevrolet accessed his credit report during a dispute between the parties.[3] In the course of that lawsuit, Hodges gave a deposition on March 27, 2003, during which she testified on direct examination about the lax policies the dealership followed regarding access to credit reports. After testifying that she would have remembered if Smith had asked her to run the credit report, counsel for the plaintiff began questioning Hodges about the reason she left her employment at Smith Chevrolet:

Q. You said you started working at Bob Smith Chevrolet in January of 2001, and you left in September of 2001?

A. Uh-huh (witness answering affirmatively), yes, sir.

Q. Why did you leave your employment with Bob Smith Chevrolet?

A. O.K. At Bob Smith, it's a very hostile environment.

When I first started there, I had heard good things about Bob Smith Chevrolet and their projection towards the future, and that's what I was interested in. But after I started working there and I became aware of the situation and the hostility on a day-to-day basis, I couldn't take it anymore. That's why I left.

Q. And describe what you mean by the hostility?

A. When Drew would call in—and that's if he wasn't in the office. He would call in every morning. He would call right at start time. He would have them put him through to the finance office, and he would talk to me, and he would yell at me about things I'd done the day before. And, then, he would say, put me through to service, and you'd put him through to service, and he would yell at them for a while. And, then, he would say, put me through to Linda, and they would put him through to Linda, and he would—I mean, it's continuous.

Q. Who is Linda?

---

1. Senior Judge Paul W. Rosenblum, sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

2. 15 U.S.C. § 1681, *et seq.*

3. *Christopher Neil Smith v. Bob Smith Chevrolet, Inc.,* No. 3:02CV–258–H.

A. Linda Wright, in the office. She's the controller.

But he went from person to person to person, and no one ever had a decent phone conversation with him. We were always yelled at.

Q. How would you describe Drew Smith's mannerisms and treatment of you during that period of time?

A. Aggressive, hostile, abrasive.

Q. And you said you finally left in September of 2001?

A. Yes, sir.

Q. Did you give notice when you left?

A. No, I walked. I just walk[ed] out and left.

Q. Any particular incident that prompted you to walk out and leave?

A. No. It was just being yelled at on a day-to-day basis.

The last time he yelled at me, I just couldn't take it anymore.

I mean, you take it home. You've got all that tension. You take it home, you take it out on your family.

Q. And were there other employees that shared your feelings about Mr. Smith's—

A. Yes.

Q. —treatment of employees?

A. Yes, sir.

Q. And was this a topic that was discussed among the employees?

A. Yes, sir.

Q. Was there any information or knowledge that came to you regarding why Drew Smith was so abusive, as you've described, towards employees?

A. Yes. Drew could have really good moods and everything was going great and business was going great—and it didn't matter if business was doing really good as to whether he yelled at you or not. He would be in a really good mood, and, then, all of a sudden (indicating), he would slam down to that bad mood, and everybody knew when it was coming and you let everybody know on the phone line, your call is coming. *Because it's common knowledge around the dealership that he has a real bad cocaine problem.*

Q. O.K.

A. And when he yells at you, you know you have been yelled at.

Q. Why do you say that?

A. He's an artist at it. He is.

Q. Would you have described him as a bully?

A. Yes.

Mr. Hemminger: Object to this entire line of questioning as completely irrelevant.

The witness: He is a bully. He likes to badger at you. Tell you you're incompetent.

By Mr. Mour:

Q. Did he tell you that?

A. When I quit, the day I quit, I went back the next day to pick up my things, he made Linda Wright call him to let him know that I was in the building. And, then, on the phone—and I've already quit—he's telling me how stupid I am and how dumb I am to leave his company.[4]

Hodges filed a motion for summary judgment, arguing that her statements were absolutely privileged as they were made while she was giving testimony in a

---

4. Deposition of Carol Ann Hodges at 17—20 (emphasis added).

judicial action, citing *McClarty v. Bickel*[5] and its progeny. Smith responded with the argument that the statements were not absolutely privileged because the testimony at issue was not material, pertinent or relevant to the subject under inquiry, citing *Schmitt v. Mann*[6] and *General Electric Co. v. Sargent & Lundy.*[7] The circuit court entered a Memorandum and Order on December 8, 2004, containing the following Conclusions:

> [Hodges] makes a motion for summary judgment, contending that there remain no genuine issues of material fact and she is entitled to judgment as a matter of law, as [Smith's] claim of slander must be dismissed because [Hodges'] statements, which were made during a judicial proceeding, are privileged. [Hodges] relies upon *Reed v. Isaacs,* Ky. 62 S.W.3d 398 (2000); and *McClarty v. Bickel,* 155 Ky. 254, 159 S.W. 783 (1913), in making her arguments.

> [Smith] responds that [Hodges'] statement, although made during a deposition or "judicial proceeding," is not absolutely privileged, as the statement was not "material, pertinent, and relevant to the subject under inquiry," citing, *Schmitt v. Mann,* 291 Ky. 80, 163 S.W.2d 281 (1942); that [Hodges'] statement concerning [Smith's] alleged cocaine use was completely irrelevant to any of the issues at hand in the *Smith* case; and that [Hodges'] motion for summary judgment should be denied. [Smith] also relies, pertinently, upon *General Electric Co. v. Sargent & Lundy,* 916 F.2d 1119 (6th Cir.1990).

> [Hodges] has filed a reply, and [Smith] a sur-reply, which this Court has reviewed and provided due consideration.

> "The prevailing rule and the one recognized in this jurisdiction is that statements in pleadings filed in judicial proceedings are absolutely privileged when material, pertinent, and relevant to the subject under inquiry, though it is claimed that they are false and alleged with malice." *Schmitt,* 163 S.W.2d at 283 (citations omitted). "On the other hand, statements which are not pertinent and material are only qualifiedly privileged, and immunity from the legal consequences of their being libelous depends on their being made in good faith." *Id.* (citation omitted).

> Review of the said deposition testimony reveals that [Hodges] was responding directly to the question of attorney David Mour when she testified that, "it's common knowledge around the dealership that he [Smith] has a real bad cocaine problem." It appears that [Hodges'] statement was material, pertinent, and relevant to the subject of Mr. Mour's inquiry (the reason [Smith] was abusive towards employees). As such, it appears that [Hodges'] testimony is absolutely privileged. Although the general subject matter of the federal lawsuit dealt with whether Bob Smith Chevrolet had violated the Federal Fair Credit Reporting Act, such does not render [Hodges'] statement immaterial, impertinent or irrelevant; nor does it make her statement subject to a qualified privilege.

The circuit court then granted Hodges' motion for summary judgment and dismissed Smith's claims against her. This appeal followed.

On appeal, Smith continues to argue that under the American Rule, an absolute privilege for defamatory statements made

---

**5.** 155 Ky. 254, 159 S.W. 783 (1913).

**6.** 291 Ky. 80, 163 S.W.2d 281 (1942).

**7.** 916 F.2d 1119 (6th Cir.1990).

during the course of a judicial proceeding only applies when the statements are pertinent and relevant to the subject under inquiry. If the statements are not pertinent or relevant, then the privilege becomes qualified, and would apply only if the statements were not malicious or willful. The crux of Smith's argument is that Hodges' statement about his cocaine use was not pertinent or relevant to whether Smith Chevrolet violated the FCRA. In determining that the privilege should apply because Hodges' statement was made in response to a direct question, as opposed to the subject matter of the case, Smith argues that the circuit court misapplied the law.

On the other hand, Hodges asserts that the questions and her responses went to Smith's conduct and state of mind, and that Smith failed to establish that her testimony did not have any relation to the federal lawsuit. In fact, Hodges argues that her statement was related to the subject of the lawsuit. Furthermore, she urges this Court to recognize that the courts in this Commonwealth have been moving towards the adoption of the English Rule, which provides that statements made in a judicial proceeding are absolutely privileged, regardless of their pertinence or relevance to the subject matter of the inquiry.

■ Our standard of review is well-settled in an appeal from the entry of a summary judgment:

> The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled

to judgment as a matter of law. Kentucky Rules of Civil Procedure (CR) 56.03. There is no requirement that the appellate court defer to the trial court since factual findings are not at issue. *Goldsmith v. Allied Building Components, Inc.*, Ky., 833 S.W.2d 378, 381 (1992). "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476, 480 (1991). Summary "judgment is only proper where the movant shows that the adverse party could not prevail under any circumstances." *Steelvest*, 807 S.W.2d at 480, *citing Paintsville Hospital Co. v. Rose*, Ky., 683 S.W.2d 255 (1985).[8]

Furthermore, it is also clear that the question of whether the privilege applies is a matter of law for the court to decide.[9]

■ The absolute immunity afforded to defamatory statements made in the course of a judicial proceeding has a long history in this Commonwealth, and an even lengthier one in the common law of England. In the United States, some courts follow the English Rule, while others have adopted the American Rule. In *Stahl v. Kincade*,[10] the Appellate Court of Indiana addressed the privilege as applied to statements made by a party in a counterclaim. Citing to 33 Am.Jur., Libel and Slander, § 149, p. 144, the Indiana court addressed the difference between the two rules, stating:

> In England the rule obtains that any statement contained in a pleading is ab-

**8.** *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App.1996).

**9.** *Sebree v. Thompson*, 31 Ky.L.Rptr. 642, 126 Ky. 223, 103 S.W. 374 (1907); *Stewart v. Hall*, 7 Ky.L.Rptr. 323, 83 Ky. 375 (1885);

*Rogers v. Luttrell*, 144 S.W.3d 841, 844 (Ky. App.2004).

**10.** 135 Ind.App. 699, 192 N.E.2d 493 (1963).

solutely privileged irrespective of its relevancy to the issues. This rule is followed in a few American jurisdictions. The prevailing rule in the United States is that such statements are privileged when pertinent and relevant to the subject under inquiry, however false and malicious such statements may be. But statements in pleadings are not privileged if they are not relevant or pertinent to the subject matter of the action.[11]

The court went on to state that, "the early English rule was not such as that above stated as the present English rule. The early English cases made the materiality or relevancy of the communication necessary to confer an absolute privileged character on the communication."[12] The *Stahl* court relied upon the Supreme Court of Florida's opinion of *Myers v. Hodges*,[13] which dealt with the application of the privilege to counsel. After reviewing several English cases decided prior to July 4, 1776, as well as those decided by the courts of the United States, the *Myers* court stated:

> In the United States, according to the overwhelming weight of authority, in order that defamatory words, published by the parties, counsel, or witnesses in the due course of a judicial procedure, may be absolutely privileged, they must be connected with, or relevant or material to, the cause in hand or subject of inquiry. If they be so published and are so relevant or pertinent to the subject of inquiry, no action will lie therefore, however false or malicious they may in fact be.[14]

Two Kentucky cases[15] were included in a list of authorities following the American Rule, as described by the *Myers* court.

The law in this Commonwealth has evolved in an interesting manner over the centuries. With one slight aberration, Kentucky has always followed the American Rule, requiring that the statement be pertinent and relevant before the privilege may apply. In 1850, Kentucky's former Court of Appeals issued the opinion of *Forbes v. Johnson*,[16] in which the privilege was held to protect a libelous statement made in a document filed with the chancellor of the Christian Circuit Court. Relying upon an 1809 opinion of the Supreme Court of New York,[17] the *Forbes* court held:

> [W]ords spoken or written in the course of justice, and pertinent to a legal proceeding within the jurisdiction of the tribunal to which they are addressed and to the remedy sought in that tribunal, are not actionable although they be false, unless the proceeding were resorted to merely for the purpose of conveying the scandal and as a cover for the malice of the party, and not in good faith as a remedy for the assertion of a right or the redress of a wrong.

Several years later, in *Morgan v. Booth*,[18] the court addressed statements made by the defendant in a criminal case while another witness was testifying:

---

11. *Id.* at 496.

12. *Id.*

13. 53 Fla. 197, 44 So. 357 (1907).

14. *Id.* at 361.

15. Those cases are *Forbes v. Johnson*, 11 B.Mon. 48, 50 Ky. 48 (1850), and *Monroe v.* *Davis*, 26 Ky.L.Rptr. 728, 118 Ky. 806, 82 S.W. 450 (1904). *See Myers*, 44 So. at 361.

16. 50 Ky. 48.

17. *Thorn v. Blanchard*, 5 Johns. 508.

18. 13 Bush 480, 76 Ky. 480 (1877).

A party to a judicial proceeding may, by himself or counsel, write or say any thing of and concerning the case, or of a witness who testifies in the case, that is pertinent and material to the matter in controversy, and he can not be held to answer for scandalous words, unless, under the pretense of pleading his cause, he designedly wanders from the point in question, and maliciously heaps slander upon the party whose conduct or evidence is under consideration; and so long as it can be said that such party confines himself to that which is pertinent and material, he is under no obligation to show that his words are absolutely true; and can not be made to answer for maliciously saying that which the law permits him to say.

In *Stewart v. Hall*,[19] the court noted that the rule "is the same as to a party to a suit, witness and counsel[.]"

The only evidence of a movement away from the American rule appears in the 1907 opinion of *Sebree v. Thompson*.[20] In *Sebree*, the court addressed a statement made by the defendant in a deposition taken in preparation for an equity suit. The court first discussed the English Rule and the American Rule:

In England all proceedings before a court of justice are held to be "absolutely privileged," and this rule applies alike to judges, litigants, their counsel, and to witnesses. The English rule has been adopted and followed with approval in many of the state courts, while in many other state courts proceedings in a court of justice are held to be "privileged" only so far as they are applicable and pertinent to the subject of the inquiry,

and are therefore "conditionally privileged."[21]

The *Sebree* court then looked to the Maryland courts, which had adopted the English Rule,

of "absolute privilege," on the ground that a sound public policy demands that "it is of the greatest importance to the administration of justice that witnesses should go upon the stand with their minds absolutely free from apprehension, that they may subject themselves to an action for slander for what they may say in giving their testimony." The rule thus adopted by the Supreme Court of Maryland is, as we above said, the English rule, and is in harmony with the decisions of many state courts of last resort; and while, as we have heretofore stated, a contrary rule has been announced and followed in many of the states, yet we believe that under the English rule the ends of justice are more nearly subserved.[22]

Thus, it appears that *Sebree* adopted the English Rule, as opposed to the American Rule. The court then went on to analyze the issue before it under, as the court termed it, the modified, or American, rule. Despite its holding, however, the opinion ended with the following statement, which appears to support the use of the American Rule:

[T]he rule which appears to us to be most equitable and just, as tending to secure the best interests of society and to serve the ends of justice, to wit, that a witness while testifying under oath in a court of justice is not subject to prosecution for libel or slander for any statement that he may make *upon the subject*

19.  83 Ky. 375.

20.  126 Ky. 223, 103 S.W. 374.

21.  *Id.* at 375.

22.  *Id.* at 377.

*under consideration.*[23] (Emphasis added.)

Cases rendered after *Sebree* have consistently held that the American Rule continues to be applied in Kentucky.[24]

In the early 1900s, two lines of cases appeared to be forming in the Commonwealth regarding the application of the privilege. *McClarty v. Bickel,*[25] a 1913 case involving an action for malicious prosecution for defamatory statements made before a grand jury, stated the rule as follows:

> Where a witness willfully and maliciously gives false testimony, he is liable to prosecution for perjury or false swearing. No civil action will lie against him, because it is a well-settled rule in practically all jurisdictions that the testimony of a witness is privileged and will not support a cause of action against him.[26]

Such statements were absolutely protected as a matter of public policy.[27] The 6th Circuit Court of Appeals relied upon *McClarty* in *Bryant v. Commonwealth*[28] and later in *Heavrin v. Nelson,*[29] as did the present Kentucky Court of Appeals in *Reed v. Isaacs.*[30] Like *McClarty*, both *Bryant* and *Reed* were suits for malicious prosecution based upon grand jury testimony. In *Heavrin,* the defendants were accused of filing false proofs in a bankruptcy proceeding and testifying falsely in a criminal trial. While the quoted passage from *McClarty* does not specifically include the requirement that the statements must be pertinent and relevant, that court relied upon three early Kentucky cases, each of which included those requirements.[31]

The other line of cases includes *Schmitt v. Mann,*[32] which addressed the application of the privilege to libel in an affidavit filed in a circuit court action by a non-party. The court held: "The prevailing rule and the one recognized in this jurisdiction is that statements in pleadings filed in judicial proceedings are absolutely privileged when material, pertinent, and relevant to the subject under inquiry, though it is claimed that they are false and alleged with malice."[33] The *Schmitt* court also held that the same rule applied to witnesses.[34] Importantly, the *Schmitt* court quoted from the then-current version of the Restatement (Second) of Torts § 588, regarding witnesses in judicial proceedings:

> A witness is absolutely privileged to publish false and defamatory matter of another in communications preliminary to a proposed judicial proceeding and as a part of a judicial proceeding in which he is testifying, if it has some relation thereto.[35]

**23.** *Id.* at 378.

**24.** *See,* e.g., *Lisanby v. Illinois Cent. R. Co.,* 209 Ky. 325, 272 S.W. 753 (1925)(holding that the American Rule is firmly established in this state).

**25.** 155 Ky. 254, 159 S.W. 783.

**26.** *Id.* at 784.

**27.** *Id.* at 785.

**28.** 490 F.2d 1273 (6th Cir.1974).

**29.** 384 F.3d 199 (6th Cir.2004).

**30.** 62 S.W.3d 398 (Ky.App.2000).

**31.** *Forbes v. Johnson,* 50 Ky. 48; *Morgan v. Booth,* 76 Ky. 480; and *Monroe v. Davis,* 118 Ky. 806, 82 S.W. 450.

**32.** 291 Ky. 80, 163 S.W.2d 281.

**33.** *Id.* at 283

**34.** *Id.*

**35.** The version now in effect reads: "A witness is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial

The precursors of *Schmitt* include *Lisanby v. Illinois Cent. R. Co.*[36] (holding that statements in a judicial proceeding are absolutely privileged if material, relevant, or pertinent to the issues involved); *Reynolds v. Evans*[37] (holding that the applicable law may be found in *Lisanby* ); *Gains v. Aetna Ins. Co.*[38] (holding that absolutely privileged communications are those uttered or written in judicial proceedings when pertinent and relevant); and *Jaybee Jellico Coal Co. v. Carter*[39] (holding that a writing filed in a judicial proceeding that was relevant and pertinent to the issue involved was absolutely privileged).

Several decades later, the 6th Circuit Court of Appeals relied upon *Schmitt*, among other cases, in *General Electric Co. v. Sargent & Lundy*, this time as the privilege applied to statements made preliminarily to a court proceeding. The court held: "Kentucky courts have long recognized that statements in judicial proceedings, if relevant to the issues involved, are absolutely privileged, even though it may be claimed that they are false and alleged with malice."[40] The court then devised a two-part analysis to determine whether the privilege applied:

First, the occasion of the communication must be examined to determine if the statement was made "preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of a judicial proceeding." Restatement § 587, at 248. Second, a

court must evaluate the content of the statement to determine if it "has some relation to a proceeding that is contemplated in good faith and under serious consideration." Restatement § 587 comments c and e, at 249–50.[41]

In *Rogers v. Luttrell*,[42] this Court very recently applied the *Sargent & Lundy* test to determine that the privilege attached to a letter sent to a family court from a licensed clinical psychologist appointed to supervise visitation.

■ It is clear, then, that based upon our examination of the law in this Commonwealth, Kentucky adheres to the American Rule, requiring that a statement made or written in a judicial proceeding must be pertinent and relevant before the absolute privilege may attach. Therefore, we disagree with Hodges' proposition that Kentucky has been moving towards the adoption of the English Rule, even in the courts' unpublished opinions.

■ In our examination of the statement at issue, we first note that it is undisputed that Hodges' statement took place in connection with a judicial proceeding. The question remains as to whether Hodges' statement that Smith had a cocaine problem was pertinent and relevant to the matter at issue, namely, whether Smith Chevrolet violated the federal FCRA and whether Christopher Smith was entitled to damages, including punitive damages. In *Stewart v. Hall*,[43] the former

proceeding or as a part of a judicial proceeding in which he is testifying, if it has some relation to the proceeding." Restatement (Second) of Torts § 588 (1977).

**36.** 209 Ky. 325, 272 S.W. 753.

**37.** 244 Ky. 267, 50 S.W.2d 549 (1932).

**38.** 20 Ky.L.Rptr. 886, 104 Ky. 695, 47 S.W. 884 (1898).

**39.** 208 Ky. 241, 270 S.W. 768 (1925).

**40.** 916 F.2d at 1126.

**41.** *Id.* at 1127.

**42.** 144 S.W.3d 841 (Ky.App.2004).

**43.** 83 Ky. 375.

Court of Appeals addressed this issue, albeit as it applied on cross-examination: "Great latitude is permissible upon a cross-examination.... A question not strictly relevant, but which is collateral, may be asked him in order to show that he has, by some disgraceful conduct, rendered himself less credible, or to fix his identity and antecedents." The same court held in *Monroe v. Davis*[44] that the language at issue was pertinent because it was used in stating the cause of action, and did not wander from the matter at issue. The Florida court in *Myers v. Hodges*[45] stated, "In determining what is pertinent, however, much latitude must be allowed to the judgment and discretion of those who maintain a cause in court." Restatement (Second) of Torts § 588, comment c, addresses the relationship of the statement to the proceedings:

> Testimony to be privileged need not be material or relevant to the issues before the court, nor does the fact that the testimony is offered voluntarily and not in response to a question prevent it from being privileged if it has some reference to the subject of the litigation. If the defamatory matter is published in response to a question put to the witness by either counsel or by the judge, that fact is sufficient to bring it within the protection of the privilege, notwithstanding the fact that it is subsequently adjudged to be inadmissible. On the other hand, a witness who persists in answering a question which has no reference to the proceeding after the judge has excluded it, is not within the privilege.

In the present case, Smith argues that Hodges' statement regarding his alleged drug problem was neither relevant nor pertinent to the issue in the *Smith* case. He asserts that the nominal, compensatory, or punitive damages sought in that case would never have originated from his use of an illegal drug, but would only have arisen from Smith Chevrolet's practices in accessing credit reports in general. Hodges, in turn, argues that her statement did in fact have some relation to the subject matter of the case, and that she was simply responding to a question regarding Smith's conduct. Furthermore, Smith's conduct was at issue as he was the person who had obtained the credit report.

While we disagree somewhat with the circuit court's reasoning (that the statement was pertinent and relevant to the question posed), we nevertheless agree that Hodges' statement was pertinent and relevant to the subject of the inquiry, so that the judicial proceedings privilege applies to protect her statement. We recognize that this rule is to be applied liberally, especially to witnesses, and that Hodges' testimony regarding Smith's behavior around the workplace, and the supposed reasons for his behavior, could be considered pertinent and relevant to the issues in the Christopher Smith lawsuit. Smith Chevrolet's state of mind regarding obtaining the credit report was certainly at issue in establishing willful noncompliance with the FCRA, as it is undisputed that Smith was the person who decided to obtain it. While we make no holding as to whether the testimony was legally relevant, we do hold that Hodges' statement had some relation to the subject matter of the federal action, and was neither impertinent nor irrelevant.

The circuit court did not commit any error in applying an absolute privilege to Hodges' statement in her deposition. Likewise, the circuit court properly entered a summary judgment in favor of

---

**44.** 118 Ky. 806, 82 S.W. 450.

**45.** 44 So. at 362.

Hodges, as she was entitled to a judgment as a matter of law.

For the foregoing reasons, the Jefferson Circuit Court's Memorandum and Order is affirmed.

ALL CONCUR.