MORGAN & POTTINGER,
ATTORNEYS, P.S.C.,
Appellants,

v.

Noel Mark BOTTS, Appellee.

GMAC Mortgage Corporation,
Appellant,

v.

Noel Mark Botts, Appellee.

Nos. 2009–SC–000515–TG, 2009–
SC–000751–TG, 2009–SC–
000818–TG.

Supreme Court of Kentucky.

April 21, 2011.

As Modified on Denial of Rehearing
Oct. 27, 2011.

Calvin Ray Fulkerson, John Christian Lewis, Erin Celeste Sammons, Fulkerson, Kinkel & Marrs, PLLC, Lexington, KY, Counsel for Appellants, Morgan & Pottinger, Attorneys, P.S.C.

Richard P. Corthell, David P. Fornshell, Dinsmore & Shohl LLP, Cincinnati, OH, Jeremy Stuart Rogers, Dinsmore & Shohl LLP, Louisville, KY, Counsel for Appellant, GMAC Mortgage Corporation.

Noel Mark Botts, Harrodsburg, KY, Counsel for Appellee.

Linda Ann Gosnell, Chief Bar Counsel, Steven T. Pulliam, Deputy Bar Counsel, Kentucky Bar Association, Frankfort, KY, Counsel for Amicus Curiae, Kentucky Bar Association.

Opinion of the Court by Justice CUNNINGHAM.

In these combined cases, we are asked to determine if the absolute privilege afforded statements made in the course of a judicial proceeding applies to statements contained in an attorney disciplinary complaint.

GMAC Mortgage Corporation (hereinafter "GMAC"), through its attorney, Morgan & Pottinger, Attorneys, P.S.C. (hereinafter "Morgan & Pottinger"), filed a disciplinary complaint against Appellee, Noel Mark Botts (hereinafter "Botts"). Botts had represented GMAC's successor-in-interest in a foreclosure action. Neither the details of Botts' representation nor the unethical conduct alleged are relevant to the issues before us today. Suffice it to say, the Office of Bar Counsel referred the matter to the Inquiry Commission, which found sufficient probable cause to file charges against Botts. The Trial Commissioner conducted an evidentiary hearing and ultimately determined that the Kentucky Bar Association (hereinafter "KBA") failed to prove, by a pre-

ponderance of the evidence, that Botts committed any of the acts or omissions charged. The Board of Governors accepted the Trial Commissioner's determination. In a confidential Opinion and Order, this Court declined further review and dismissed the charges against Botts.[1]

Subsequently, Botts filed suit against GMAC and Morgan & Pottinger in the Mercer Circuit Court, requesting relief from the pecuniary and professional harm he has allegedly suffered as a result of the disciplinary complaint. He alleged wrongful use of civil proceedings, defamation and slander, abuse of process, fraud, and outrageous conduct. Appellants filed numerous motions to dismiss based on claims of immunity, all of which were denied.

The present matter represents the consolidation of three separate appeals, each from an order denying a motion to dismiss. Because both GMAC and Morgan & Pottinger raised claims of absolute immunity as the basis for their motions, the order is appealable, though interlocutory. *Breathitt County Bd. of Educ. v. Prater*, 292 S.W.3d 883, 887 (Ky.2009) (stating "an order denying a substantial claim of absolute immunity is immediately appealable even in the absence of a final judgment."). Further, because the claim raises an issue of statewide importance, this Court granted Morgan & Pottinger's motion to transfer.

Appellants argued that they were immune from suit pursuant to the judicial statements privilege and SCR 3.160(4). The trial court rejected the former argument, reasoning that the privilege does not protect Appellants' statements made to the KBA. Without further elaboration, the trial court concluded that these statements were "adjudged without merit." The trial court likewise rejected Appellants' assertion that SCR 3.160(4) immunizes attor-

neys who file complaints with the KBA from civil liability. The court determined that the rule granted only a qualified immunity and applies only after a judicial determination that the complaint was made in good faith. Though not argued by any of the parties, the trial court further opined that an absolute grant of immunity pursuant to SCR 3.160(4) would be unconstitutional, in violation of the separation of powers and equal protection clauses of the United States and Kentucky Constitutions.

■■■ Whether a court should dismiss an action pursuant to CR 12.02 is a question of law. *James v. Wilson*, 95 S.W.3d 875, 884 (Ky.App.2002). Consequently, the trial court's denial of Appellants' motions to dismiss pursuant to CR 12.02 will be reviewed *de novo*. *Morgan v. Bird*, 289 S.W.3d 222, 226 (Ky.App.2009). Furthermore, the question of whether a privilege applies is a matter of law for the court to decide. *Rogers v. Luttrell*, 144 S.W.3d 841, 844 (Ky.App.2004).

■■ Because it is determinative of the matter, we first address Appellants' claims that they are entitled to absolute immunity from liability based on the judicial statements privilege. "The prevailing rule and the one recognized in this jurisdiction is that statements in pleadings filed in judicial proceedings are absolutely privileged when material, pertinent, and relevant to the subject under inquiry, though it is claimed that they are false and alleged with malice." *Schmitt v. Mann*, 291 Ky. 80, 163 S.W.2d 281, 283 (1942). *See also Smith v. Hodges*, 199 S.W.3d 185, 189 (Ky. App.2005) ("The absolute immunity afforded to defamatory statements made in the course of a judicial proceeding has a long history in this Commonwealth...."); *Morgan v. Booth*, 76 Ky. 480 (1877).

---

1. Contrary to the assertion contained in Justice Noble's dissent, Botts was never temporarily suspended from the practice of law as a result of this matter.

■ A communication must fulfill two requirements in order to fall within the ambit of the judicial statements privilege. First, the communication must have been made "preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as part of a judicial proceeding." *General Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1127 (6th Cir. 1990) (citing *Restatement (Second) of Torts* § 587 (1977)). Second, the communication must be material, pertinent, and relevant to the judicial proceeding. *Smith*, 199 S.W.3d at 193 (citing *Lisanby v. Illinois Cent. R. Co.*, 209 Ky. 325, 272 S.W. 753, 754 (1925)).

■ Attorney discipline proceedings which commence with the filing of a bar complaint, as occurred in this case, are judicial proceedings. This Court is granted original jurisdiction in the discipline of attorneys and regulation of the profession. Ky. Const. § 116. The KBA has been vested with the authority of this Court to administer that responsibility. SCR 3.025. *See also KBA v. Shewmaker*, 842 S.W.2d 520, 521 (Ky.1992).

"Judicial proceedings include all proceedings in which an officer or tribunal exercises judicial functions." *Restatement (Second) of Torts* § 587 (1977). The disciplinary process has been likened to a criminal trial. *KBA v. Harris*, 269 S.W.3d 414, 417–18 (Ky.2008). The Office of Bar Counsel is empowered to assess complaints, investigate and prosecute disciplinary cases, and impose alternative discipline when appropriate. SCR 3.160(3)(A). The Inquiry Commission has authority to subpoena witnesses and take testimony. SCR 3.180(3). The Trial Commissioner enters findings of fact and conclusions of law. SCR 3.360(1). Clearly, the KBA exercises a judicial function in the handling of disciplinary matters and, therefore, disciplinary hearings are judicial proceedings. *See* 77 A.L.R.2d 493 (collecting authorities). *See*

*also Baggott v. Hughes*, 34 Ohio Misc. 63, 72, 296 N.E.2d 696, 701 (1973) ("Investigations and proceedings on complaints as to an attorney's professional conduct is a judicial function in Ohio."). *Accord McCurdy v. Hughes*, 63 N.D. 435, 248 N.W. 512 (1933); *Ashton–Blair v. Merrill*, 187 Ariz. 315, 928 P.2d 1244 (Ariz.Ct.App.1996); *Doe v. Rosenberry*, 255 F.2d 118 (2nd Cir.1958).

■ Thus, any statement made preliminary to, in the institution of, or during the course of an attorney disciplinary proceeding will be privileged so long as it is material, pertinent, and relevant to such proceeding. This would include statements contained in the ethics complaint. The complaint triggers the investigative and disciplinary functions of the KBA and, therefore, is always material, pertinent, and relevant to attorney discipline proceedings. *See Katz v. Rosen*, 48 Cal. App.3d 1032, 1036, 121 Cal.Rptr. 853 (Cal. Ct.App.1975) ("Informal complaints received by a bar association which is empowered by law to initiate disciplinary procedures are as privileged as statements made during the course of formal disciplinary proceedings.").

Contrary to the trial court's determination, this conclusion is not swayed by the fact that the charges against Botts were ultimately dismissed. *See Jarvis v. Drake*, 250 Kan. 645, 830 P.2d 23 (1992) (doctrine of absolute immunity barred attorney's suit against former client's spouse who filed grievance against attorney that was later dismissed). Little explanation is needed to emphasize that a lack of evidentiary support is not the equivalent of a finding of falsehood. Regardless, even if patently false or entered with malice, Kentucky's judicial statements privilege is absolute and would still apply. *Accord Sinnett v. Albert*, 188 Neb. 176, 195 N.W.2d 506 (1972) (judicial statements privilege protects contents of attorney ethics com-

plaint so as to bar subsequent suit against complainant for libel); *Kerpelman v. Bricker*, 23 Md.App. 628, 329 A.2d 423 (Md.Ct.Spec.App.1974) (absolute privilege pursuant to judicial statements doctrine attaches to statements contained in attorney disciplinary complaint).

■ A larger question is posed, however, because Botts' complaint also alleges wrongful use of civil proceedings, abuse of process, fraud, and outrageous conduct. Stated otherwise, his claims are based not only on Appellants' statements contained in the KBA complaint, but also on the act of filing the complaint. Whether the judicial statements privilege encompasses the act of filing the complaint is also a matter of first impression in Kentucky.

It seems that, until roughly the mid-twentieth century, courts assumed the right of an attorney to sue for malicious prosecution or other similar tort actions based on the filing of a disciplinary complaint. *See generally* 52 A.L.R.2d 1217 (2011). Indeed, a very early Kentucky case seems to acknowledge the right of an attorney to pursue a malicious prosecution action against the attorney who instigated disbarment proceedings against him. *See Lancaster v. McKay*, 103 Ky. 616, 45 S.W. 887 (1898) (in action predating the Rules of Professional Conduct and the establishment of the Bar Association as having jurisdiction over disciplinary proceedings, judgment ultimately reversed for insufficiency of proof that disbarment suit lacked probable cause). However, in the latter

part of the twentieth century, a growing trend emerged to bar any type of civil action predicated upon the filing of an attorney discipline or ethics complaint.

At least twenty-eight states have evinced a policy decision to bar such civil suits through enactment of a court rule or statute.[2] These provisions, whether granting absolute or qualified immunity to communications made to the disciplinary authority, also prohibit any type of lawsuit based on the privileged communication or complaint. Tennessee Supreme Court Rule 9, § 27 is representative of this type of court rule: "Communications to the board, district committee members or Disciplinary Counsel relating to lawyer misconduct or disability and testimony given in the proceedings shall be absolutely privileged, and *no civil lawsuit predicated thereon* may be instituted against any complainant or witnesses." (Emphasis added.) Each of these rules uses similarly expansive language barring any "lawsuit," "civil suit," or "civil liability" without restricting the prohibition to suits for defamation, libel or slander. *Cf.* WV R Lwyr Disc Rule 2.5 (West Virginia designates that all information provided to the disciplinary authority "shall be privileged in any action for defamation."). Though few cases exist interpreting the typically broad language of these rules, at least four courts have specifically concluded that the privilege would bar even claims relating to the act of filing the complaint, such as malicious prosecution or abuse of process. *See Wallace v.*

2. DE Lawyers R Disc Proc Rule 10 (Delaware); GA Bar Rule 4–221(g) (Georgia); RSCH Rule 2.8 (Hawaii); ID Bar Comm Rule 520(a) (Idaho); ILCS S.Ct.R. 775 (Illinois); Ind. ADR 23 § 20 (Indiana); IA R 35.23(1) (Iowa); M. Bar. R. 7.3(a)(1) (Maine); MA SJC 4.01 § 9(1) (Massachusetts); MI Rules MCR 9.125 (Michigan); 52 Minn.Stat. Ann. RLPR 21 (Minnesota); Miss.Code. Ann. § 73–3–345 (Mississippi); MO R Bar 5.315 (Missouri); MT R 17 (Montana); Nev. Sup.Ct. Rules 106 (Nevada); NH SCR 37(7) (New Hampshire); NM R Disc 17–304 (New Mexico); NCGSA § 84–28.2 (North Carolina); NDR Lawyer Discipline 6.5 (North Dakota); 204 Pa.Code § 85.9 (Pennsylvania); RI RSCT, Art III Rule 7 (Rhode Island); SCACR 413 (South Carolina); SDCL § 16–19–30 (South Dakota); TX Gov't § 81.072 (Texas); VA Code Ann § 54.1–39.08 (Virginia); WI SCR 21.19 (Wisconsin); Wy. Disp.Code § 10 (Wyoming).

*Jarvis,* 119 N.C.App. 582, 459 S.E.2d 44 (1995); *Jarvis v. Drake,* 250 Kan. 645, 830 P.2d 23 (1992) (interpreting rule which affords judicial immunity to participants in the attorney discipline process); *In re Smith,* 989 P.2d 165 (Colo.1999) (interpreting former rule); *Kamaka v. Goodsill Anderson Quinn & Stifel,* 117 Hawai'i 92, 176 P.3d 91 (2008). *But see Goldstein v. Serio,* 496 So.2d 412 (La.Ct.App.1986) (holding that rule affording privilege to contents of bar complaint does not extend to the act of filing the complaint).

While the majority of states protect complainants through enactment of a statute or rule, some have achieved the same result through application of the judicial statements privilege and, thus, are more persuasive in consideration of the present matter. In *Stone v. Rosen,* Florida recognized that an absolute privilege protects statements made to the Bar Association in a complaint which operates to prohibit the attorney's claim of malicious prosecution against the complainant. 348 So.2d 387 (Fla.Dist.Ct.App.1977). The holding in *Stone* was later reaffirmed by the Florida Supreme Court, notwithstanding subsequent passage of procedural rules which removed confidentiality of the grievance process. *Tobkin v. Jarboe,* 710 So.2d 975 (Fla.1998). The Court of Appeals of Arizona reached a similar result in *Drummond v. Stahl,* wherein the plaintiff-attorney filed suit against opposing counsel alleging tortious interference with a contractual relationship through the filing of a bar complaint. 127 Ariz. 122, 618 P.2d 616 (Ariz.Ct.App.1980). The court determined that the judicial statements privilege affords complainants an absolute privilege for statements made in attorney discipline proceedings, and that the privilege operated to bar the plaintiffs claim of tortious interference. *Id.* at 619–20. *See also Ashton–Blair,* 928 P.2d at 1246–47 (applying absolute privilege under judicial statements doctrine to bar at-

torney's claim for defamation against complainant).

Though there is some authority to the contrary, *see, e.g., Goldstein,* 496 So.2d 412, we conclude that the judicial statements privilege encompasses the act of filing the complaint, in addition to the statements contained therein. Sound public policy compels this conclusion. "The doctrine of privileged communications rests upon public policy 'which looks to the free and unfettered administration of justice, though, as an incidental result, it may, in some instances, afford an immunity to the evil-disposed and malignant slanderer.'" *Schmitt,* 163 S.W.2d at 284 (quoting *Bartlett v. Christhilf,* 69 Md. 219, 14 A. 518, 520 (1888)). This rationale applies no less to attorney discipline proceedings. In order to maintain a self-regulating profession, the investigation of unethical conduct must be vigorous and complainants must be free from threat of *any* civil liability. Any lesser grant of immunity would have a chilling effect on the reporting of attorney misconduct. *See Jarvis,* 830 P.2d 23 at 26 (internal quotations omitted) (["A]pprehension of personal liability for presenting a question of professional responsibility to the disciplinary administrator might tend to subvert the system established for ensuring that persons holding licenses to practice law are fit to be entrusted with professional and judicial matters.").

The purpose of this policy would be eviscerated if the protection extends only to the statements contained in the complaint itself, but not to the act of filing the grievance. While Justice Noble is correct in her dissent that sometimes the attorney and the complainant may be equally sophisticated and on "equal-footing," this is often not the case. When the complainant is not an attorney, there is an inequitable balance of power which creates a very real opportunity for attorney intimidation. At-

torneys can threaten and pursue retaliatory litigation at very little expense and through their own means. "Conversely, the cost of litigation coupled with the risk of liability in defending against such an action could be enough to discourage an individual from bringing a meritorious complaint." *Tobkin,* 710 So.2d at 977. Laypersons, in deciding whether to file a bar complaint, cannot be expected to understand the subtle legal difference between an allegation of defamation versus a claim of abuse of process. And it is insufficient that an "honest" complainant would eventually be exonerated of any abuse of process claim. It is the threat and potential for retaliatory litigation—of any kind—that serves as a disincentive to filing a bar complaint.

We must encourage persons with complaints against attorneys to submit such information to the KBA for proper investigation and examination. This includes persons who might lack knowledge of the law and, therefore, have some doubt as to the propriety of the attorney's conduct or the validity of the complaint. "If ethics investigations are to be conducted effectively, it is imperative that complainants be free from the threat of themselves being sued." *Farber v. Dale,* 182 W.Va. 784, 392 S.E.2d 224, 227 (1990). This includes the act of filing the bar complaint itself. The threat of *any* retaliatory suit—whether it is for defamation, slander, or abuse of process—would have a chilling effect on the filing of bar complaints.

We do not believe our holding today unduly burdens attorneys or otherwise abrogates a right. Rather, certain causes of action do not exist in privileged situations. Here, "one who elects to enjoy the status and benefits as a member of the legal profession must give up certain rights or causes of action...." *Stone,* 348 So.2d at 389. If a bar complaint is determined to be based on probable cause and results in

disciplinary action, then clearly the attorney has no cause of action against the complaining party. If the complaint is deemed lacking in probable cause, or even entirely without merit, any harm to the attorney is minimal and would amount to little more than mere inconvenience. In Kentucky, the bar complaint, the investigation by the Inquiry Commission, and the disciplinary proceedings are entirely confidential. SCR 3.150(1). In fact, there is no publication whatsoever unless, and until, a public reprimand or other public discipline is imposed. *Id.* As such, the potential harm suffered by an attorney at the hands of the malicious complainant—if indeed the complaint lacks merit—is minimal and certainly does not outweigh the competing interests. Further, because of the protection afforded by the confidentiality of KBA proceedings, the attorney is not in the same position as a party to an ordinary suit that might damage reputation or character, where pleadings are public.

Accordingly, we hold today that any communication or statement made to the KBA during the course of a disciplinary hearing or investigation, including the contents of the bar complaint initiating such proceedings, are absolutely privileged. This privilege extends to any claim relating to the act of filing the bar complaint, such as abuse of process, wrongful use of civil proceedings, or malicious prosecution.

Notwithstanding our holding herein, we must remand this matter to the Mercer Circuit Court for a determination if further fact-finding is necessary. Botts' complaint, including the amended complaint, is unclear as to the factual basis of his claims, particularly those claims for fraud, defamation and slander. As stated above, any claim based on the content of the KBA complaint, or on the act of filing such complaint, must be dismissed. However, in his complaint, Botts references statements allegedly made outside of, and prior

to, the filing of the complaint. The pertinent part is ambiguous at best. He does not identify the content of the statements, at whom they were directed, in what forum they were made, or specifically when they were made. He has presented no proof to support his claims, other than the bar complaint. Indeed, on at least two occasions during hearings before the trial court, Botts was asked whether he had proof, other than the KBA complaint, and he replied that he did not. For these reasons, we have serious doubt that Botts' bare allegation of "accusations" satisfies the requirements of notice pleading so as to defeat a motion to dismiss. Nonetheless, out of an abundance of caution, we remand this matter to the trial court for further fact-finding, if necessary, and for final determination as to the viability of Botts' claim in light of our holding herein.

For the foregoing reasons, this case is remanded for further proceedings consistent with this opinion.

MINTON, C.J.; ABRAMSON and VENTERS, JJ., concur. NOBLE, J., dissents by separate opinion. SCOTT, J., also dissents by separate opinion in which SCHRODER, J., joins.

NOBLE, J., dissenting:

This case presents a difficult tension between well-recognized tort claims such as wrongful use of civil proceedings, defamation, tortious interference with the right to work, and important policy considerations related to attorney discipline proceedings, which serve to protect the public. The majority is clearly correct that the Supreme Court determines how attorney discipline matters proceed and the policy behind such proceedings. On the other hand, Justice Scott is equally correct in his assessment of how tort proceedings that deal with reputational matters have developed through ancient common law principles, modern case law, and statutes. Both

opinions offer strong arguments. Nevertheless, I cannot fully agree with either position, though ultimately I conclude that Justice Scott would reach the correct result in allowing some of the Appellee's claims to proceed. My biggest disagreement, therefore, is with the reasoning and result of the well-written majority opinion, which I will address first.

The majority errs primarily in extending the judicial statements privilege so that it bars even actions related to the filing of a complaint or initiation of suit or prosecution.

I must agree with Justice Scott, who notes that at least some of Appellee's claims—specifically his claim for wrongful use of civil proceedings and outrageous conduct—are not based on the "judicial statements" in this case. Instead, they stem directly from the act of wrongfully filing the bar complaint, regardless of the complaint's content. Assuming the Appellee's claims are true, which we must at this point, the filing of the bar complaint resulted in Appellee's being temporarily suspended from the practice of law, which substantially affected his income and led to other civil claims being brought against him, and in his having to pay to defend himself at the disciplinary proceedings—all of which the majority dismisses as "minimal and . . . little more than mere inconvenience." So, if the judicial statements privilege only extends to those claims based on the content of the judicial statements, e.g., a defamation claim for statements in the bar complaint, at least some of Appellee's other claims must survive.

The next question, then, is the proper scope of the judicial statements privilege (also known as the judicial proceedings privilege). That privilege extends only to bar tort claims stemming directly from the *content* of the judicial statements themselves, such as a defamation claim based on a witness's testimony at trial. While no

action lies because of the content of statements made in a judicial proceeding, an action can lie for the fact that the speaker *instituted* the proceedings wrongfully—that is, maliciously and without probable cause—through wrongful institution of a civil proceeding, a form of malicious prosecution. In such a case, the statements in the pleading, which are privileged, are not the tortious acts; rather, the initiation of the action itself, regardless of the content of the pleadings, is the tortious act. *See, e.g., Goldstein v. Serio,* 496 So.2d 412, 415 (La.Ct.App.1986) ("The affirmative defense of absolute privilege applies only to statements communicated to third person. Malicious prosecution, however, is not concerned with the statements made during a proceeding but rather with the intent of the parties in instituting the original proceeding. Therefore, we can not hold that absolute privilege is an affirmative defense to a malicious prosecution action."). The need for the immunity privilege for a speaker in a judicial proceeding and the right of an individual to sue that speaker for wrongful institution of a civil proceeding are therefore not legally mutually exclusive.

The majority, however, concludes that the privilege "extends to any claim relating to the act of filing the bar complaint, such as abuse of process, wrongful use of civil proceedings, or malicious prosecution." In so holding, the majority refers to the decisions of several other states that have extended *a* privilege to bar complaints. In so doing, the majority errs in two ways. First, it calls the new privilege an extension of the judicial statements privilege, which it cannot be. Second, even assuming that this Court can manufacture a wholly new privilege as part of its power to regulate the profession of law, it should not do so.

The judicial statements privilege can apply only when the claim stems from the statements made in the judicial proceeding, not from the act of wrongfully bringing the action without probable cause. *See Smith v. Hodges,* 199 S.W.3d 185, 192 (Ky. App.2005) (reviewing cases applying privilege to malicious prosecution claims and noting they are "based upon grand jury testimony"). In deciding if the privilege applies, the focus must be on the allegedly tortious act—either a false statement or the wrongful institution of an action. If the tort claim, whether for defamation, perjury, or even malicious prosecution, is based on a false statement, the privilege can bar it. But if the tort claim is based on the institution of the action, the privilege has no applicability whatsoever. To hold otherwise would subsume entirely the torts of malicious prosecution and wrongful institution of civil proceedings in the privilege, even outside the context of bar complaints. The majority's reading of the privilege would effectively destroy the torts of malicious prosecution and outrage in other contexts.[3]

---

**3.** Though the majority does not address it, beyond noting that the trial court did, it is clear that SCR 3.160(4) is no help in creating a privilege for a bar complainant. It is questionable whether such a rule can create a substantive privilege, as noted by the trial court.

But that issue need not be resolved, since this rule does not extend a privilege to a bar complainant. The rule purports only to grant immunity to "the Association, the Board, the Director, the Inquiry Commis-

sion, the Trial Commission, the Office of Bar Counsel, [and] their officers, employees, agents, delegates, or members" from liability to a person who initiates a complaint or to any attorney against whom a complaint is made. SCR 3.160(4). The rule makes *no* mention of immunity for the complainant. It is intended to protect the direct participants in the disciplinary process itself, that is, those who marshal the evidence (*e.g.,* Bar counsel) and those who decide the case (*e.g.,* the trial commissioner, the Board of Governors), who in all likeli-

This understanding of the privilege as limited only to statements, and not the act of wrongfully initiating a claim lacking probable cause, comports with the history and policy behind the privilege, in addition to the cases applying it. The judicial statements privilege originated in English common law, and has always applied in American courts. An excellent and scholarly discussion of the development of the privilege to its present state in Kentucky law is set forth by Court of Appeals Judge Guidugli in *Smith v. Hodges*, 199 S.W.3d 185 (Ky.App.2005), and thus will not be discussed at length here. However, the basis for the privilege is a matter of public policy supporting fundamental justice by assuring participants in judicial or quasi-judicial proceedings that they can speak freely in presenting their claim, or by a lawyer presenting his or her client's claim, without fear of suit or liability for defamation. *See* 2 Dan B. Dobbs, *The* Law *of Torts* 1154 (2001). The fact that this sometimes results in a grant of immunity to malicious liars has been considered justified by the need for honest testimony without fear of reprisals. *See Schmitt v. Mann*, 291 Ky. 80, 163 S.W.2d 281 (1942). Viewed another way, very old Kentucky case law states:

> A party to a judicial proceeding may, by himself or counsel, write or say anything of and concerning the case, or of a witness who testifies in the case, that is pertinent and material to the controversy, and he can not be held to answer for scandalous words, unless, under the pretense of pleading his cause, he designedly wanders from the point in question, and maliciously heaps slander upon the party whose conduct or evidence is under consideration; and so long as it can be said that such party confines himself to that which is pertinent and material, he is under no obligation to show that his words are absolutely true; and can not be made to answer for maliciously saying that which the law permits him to say.

*Morgan v. Booth*, 76 Ky. (13 Bush) 480, 483–84 (1877) (internal citations omitted).

Clearly, our state constitution gives the Supreme Court authority to regulate the practice of law and to discipline attorneys through procedures it sets. Ky. Const § 116. Thus, because they are required by the Supreme Court's established procedure, hearings before the disciplinary agents enumerated in the Supreme Court Rules can only be "judicial or quasi-judicial" in nature. And, as the majority points out, "Judicial proceedings include all proceedings in which an officer or tribunal exercises judicial functions." Restatement (Second) of Torts § 587 (1977). Therefore, the Court's agents enjoy a form of "judicial" immunity as set forth in SCR 3.160(4). Similarly, a claimant has absolute immunity for statements made in the course of such a judicial proceeding under the judicial statements privilege, even though the claim relies on false or malicious statements, if they are material and relevant to the proceedings. *Schmitt v. Mann*, 291 Ky. 80, 163 S.W.2d 281, 283 (1942).

However, in his dissent Justice Scott points out that the tort of wrongful institution of a civil proceeding is not based on the fact that false or malicious statements have been made, but rather that the attorney has been wrongfully subjected to a claim at all. He argues that there has

hood would enjoy judicial or quasi-judicial immunity under the common law anyway. Bar Complainants do not fall within this category of direct participants in the disciplinary process.

That the complainant also happens to be a "member" of the KBA, i.e., an attorney, does not garner any immunity. Such a reading stretches the rule beyond the point of reasonable interpretation.

been no immunity for this type of claim heretofore, and that to allow such is to effectively nullify the tort. Such claims arise through a civil action brought against a person who has previously filed what is claimed to be a "frivolous" suit resulting in damages to the plaintiff. These damages can cover the cost of the previous litigation and other damages, including damage to reputation. While today's nomenclature uses the term wrongful institution of a civil proceeding, this is merely a form of malicious prosecution, which has historically applied to both criminal and civil proceedings. *Woods v. Finnell,* 76 Ky. (13 Bush) 628 (1878). The action may be brought when a judicial proceeding has been maliciously instituted against a person without probable cause. Historically, as well as today, "[p]robable cause means less than prima facie evidence of guilt, namely, such circumstances as warrant suspicion." *Branham v. Berry,* 4 Ky. Law Rep. 412 (Ky.Super.1882) (citing *Locke v. United States,* 11 U.S. 339, 7 Cranch 339, 3 L.Ed. 364 (1813)).

Thus, I must conclude that the judicial statements privilege cannot extend to the act of wrongfully filing a claim which arguably lacks probable cause or to statements made outside the context of a judicial proceeding. What the majority seeks to do is create an entirely new privilege, one based on this Court's power and duty to regulate attorney conduct, as other states have done. *See, e.g., Toft v. Ketchum,* 18 N.J. 280, 113 A.2d 671, 676 (1955). But we should acknowledge that we are creating an entirely new privilege, one that works only to disadvantage attorneys, rather than stretching an established privilege to the breaking point. There is a strong basis for a debate about whether such a new privilege is sound policy or even permissible under the Kentucky Constitution.

Justice Scott has emphasized this latter issue, finding that the majority's position is in tension with the Constitution's guarantee to the right to sue for damage to one's reputation. Though I am somewhat sympathetic to the position, I do not think it is necessary to reach the constitutional question because sound policy disfavors the creation of a new privilege for bar complainants.

Justice Scott discusses Section 114 of the Kentucky Constitution, known as the Open Courts Clause, which does say that "every person" shall have a remedy "by due course of law" for an injury done to his or her reputation, among other things; but I cannot read Section 114 to make it unconstitutional to apply the judicial statements privilege for claims made in a lawyer discipline action even though such an application precludes the reputational torts of slander and libel. That privilege, much like the torts of malicious prosecution and wrongful use of civil proceedings, albeit under a different name, existed at the time Section 114 was enacted. So I think the privilege continues to apply to the contents of statements made during a judicial proceeding and is not barred by the Constitution. By the same token, I believe malicious prosecution or wrongful institution of a civil proceeding remain viable torts—for all Kentucky citizens.

Thus, instead of looking to the Constitution, this case should be resolved by deciding whether a new privilege, one related to this Court's constitutional power to regulate attorney conduct and discipline, should or can be created. The real tension here comes from public policy that affects all the governed and an individual's right to a cause of action. The fact that the individual having the cause of action for wrongful institution of a civil proceeding or the tort of outrageous conduct is a lawyer *does not* make a justifiable difference.

I acknowledge that lawyers are members of a profession, with the attendant

responsibilities of professional conduct, and that the Supreme Court has been charged with regulating that conduct. But it is simply overreaching with that power when the Court creates a new privilege which applies *only* to the detriment of lawyers. Doing so reflects an overly cynical view of attorneys in favor of claimants that presupposes that clients must not be harmed, but that it is acceptable for clients to inflict harm on innocent counsel.

Since the judicial statements privilege is only related to *statements* made in a judicial proceeding, any grant of immunity for other causes of action must be created out of whole cloth. This Court *must not do this* absent extremely compelling reasons. It is true that some states have found the possibility of chilling bar complaints to be sufficiently compelling, but I find their positions to be poorly supported.

Close examination of the factors that must be considered weighs *against* creating such a broad-sweeping immunity. First, what is the justification for treating attorneys more harshly than any other professional in Kentucky? Physicians, counselors, social workers, and other professions that are governed by licensure boards may bring a wrongful institution of civil proceedings or an outrageous conduct claim against the client who has wrongly accused them. Under the majority's opinion, lawyers would be the only professional group in Kentucky who would be denied these causes of action. *All* plaintiffs are denied a cause of action for slander and libel due to the judicial statements privilege. The same cannot be said for this new, unnamed privilege, unless the Court means to effectively abolish the torts of outrage and wrongful institution of a civil proceeding by saying the new privilege applies to *all* such cases where the judicial statements privilege applies. Is there a true, overweening justification for this disparate treatment of attorneys?

Second, while this Court is charged with governing the *practice* of law, an attorney who is exercising his or her right to access to the courts is not engaging in the practice of law. If filing a personal law suit is the practice of law, then the courts will be overwhelmed with illegal practice claims, as that is essentially what every unlicensed plaintiff would be doing. While this analogy may sound absurd, it illustrates that the Court's *only* constitutional authority here is to govern the actual practice of law. Unless exercising one's right to access to the courts is somehow unethical so as to impact an attorney's actual practice of law, this Court has zero authority to tell an attorney or any other citizen that he or she cannot file a lawsuit absent overwhelming public interest to the contrary.

Third, creating and applying this privilege only to attorneys simply is not justified by any substantial evidence, though the privilege certainly impacts an attorney's substantial rights. There is only supposition that allowing an attorney to bring a wrongful institution of civil proceedings or outrageous conduct action would result in legitimate claims not being made. No studies have been presented, not even rudimentary surveys. Applying a privilege to these causes of action requires acting on a possibility of chilling but results in a certainty of deprivation of rights.

Additionally, this concern over a possible chilling effect presumes that all such clients are the so-called "little guy," who is unsophisticated, perhaps uneducated, and therefore stands powerless next to the attorney, who is learned in the law and an officer of the courts. But, as amply illustrated by *this case,* clients are frequently at least on an equal footing with their counsel, if not in a superior position, having the resources of large multinational corporations. Allowing such a client an absolute privilege to file a bar complaint

would invite abusive practices by which the client seeks to bend the attorney to its will and force him to take (or not to take) a course of action that he or she deems prudent. Moreover, this Court cannot take the position of splitting hairs, so as to allow the privilege for the "little guy" but not for the powerful or sophisticated client. Interestingly, there is little or no likelihood that an attorney will even bring a malicious prosecution claim against the sort of client who the privilege is intended to protect. Such a suit would rarely be worthwhile.

Fourth, this Court must guard against a knee jerk reaction that, of course, an attorney must not sue his client, even though the attorney may be seriously harmed by a client's antics, just because the attorney was previously in a trust relationship with a client. To have value, trust must be a two-way street, and in no other area of the law do we deny a person the right to remedy a breach of trust by an opponent. Though a distasteful concept, a client who makes a bar complaint against an attorney is in the posture of an opponent. And while attorneys remain ethically bound to preserve their clients' secrets, they are not required to stand by helplessly while their careers are ruined. The trial court is perfectly capable of screening what is appropriate evidence and what remains ethically shielded. Nor must this Court jump on the bandwagon that because other state courts are granting such immunity, we must do likewise, at least not without sufficient consideration of how our jurisprudence is affected generally by this decision. In many ways Kentucky is unique, and our Court is sworn to be cognizant of our own law and needs first.

Finally, this Court must be cognizant of the reputation of our profession, which is often determined based on negative publicity about lawyer wrongdoing, with very little said about all the *right* things law-yers do. Over history, lawyers have defended our liberties, supported causes that bring better government, given of their time to the needy, and been a lifeline to clients lost in a morass of legalities. Many do pro bono work, or work in public service jobs. Indeed, our oath of office requires Kentucky attorneys to swear to uphold the principles put forth in our constitutions and statutes. When an attorney *fails* in this duty, this Court has a strong interest in appropriate discipline, even as much as denying the right to practice law. But when an attorney has done no wrong, and a bar complaint is dismissed against him or her, there is no remedy to let the public know, or to get recompense for a damaged reputation, other than to bring suit for the causes of action available to them such as wrongful institution of civil proceedings or outrageous conduct, though it is true that most attorneys do not choose to bring these actions. It is nonetheless *their* choice. These actions can serve the attorney individually, but can also serve the bar in general because a negative impression of the practice of law can be corrected.

This Court must act circumspectly and carefully. We must not undermine either the respect of the public or of the attorneys who practice before us. I do not believe that allowing attorneys the same right to act individually as is enjoyed by all other citizens will undermine public respect or understanding, but will certainly keep the respect and willingness of attorneys to practice.

Consequently, I dissent from the majority opinion and would instead allow Appellee's claims not covered by the judicial statements privilege, as described above, to proceed.

SCOTT, J., dissenting:

I am compelled to dissent from the majority's conclusion that bar complainants

enjoy absolute—rather than qualified—immunity from civil liability rightfully arising from the filing of an alleged malicious bar complaint. I simply do not believe the majority's conclusion is supported by the Constitution of this Commonwealth or sound precedent of this Court.

Bar complaints have the potential to devastate an attorney's reputation—the lifeblood of any lawyer's practice. In fact, one's reputation, be it that of a lawyer or not, is so precious in this Commonwealth that the term is enshrined in Section Fourteen of the Kentucky Constitution, a provision that commands:

> *All* courts shall be open, and *every person* for an injury done him in his lands, goods, person or *reputation, shall* have remedy by due course of law, and right and justice administered without sale, *denial* or delay.

(Emphasis added.) Today, in broad strokes, the majority concludes that the judicial statements privilege "encompasses the act of filing the complaint, so as to bar [a] claim for 'misuse of the attorney discipline process' and 'reckless filing of a Bar complaint.'" Given the fact that the right to recover for one's reputation is secured in our Constitution, I simply cannot agree.

Moreover, I believe that this Court's decision is at odds with our adoption of the tort of "wrongful use of civil proceedings." In *Drasin v. Raine,* 621 S.W.2d 895, 899 (Ky.1981), we explained that there are six basic elements necessary to maintain an action of "wrongful use of civil proceedings," namely: 1) the institution or continuation of original judicial proceedings or of administrative or *disciplinary* proceedings; 2) by, or at the instance, of a party; 3) the termination of such proceedings in the opposing party's favor; 4) malice in the institution of such proceeding; 5) want or lack of probable cause for the proceed-

ing; and 6) the suffering of damage as result of the proceeding. *See also Mapother & Mapother, P.S.C. v. Douglas,* 750 S.W.2d 430 (Ky.1988).

It is true, however, that the *Douglas* court recognized, as I do today, that these actions are not favored in the law. Yet, as plainly stated in *Douglas,* the disfavor of the tort of wrongful use of civil proceedings springs forth from a desire to protect only those actions filed "in good faith and upon reasonable grounds." *Id.* This preference for claims made in good faith and upon reasonable grounds is key, and dispositive, in my opinion. Nothing in our jurisprudence, until today, has ever supported the notion that a bad-faith claim deserves the protection of absolute immunity. The majority's decision today overwhelms even the "tort of outrage" against attorneys who assert malicious bar complaints.

To do so, the majority cites to the case of *Field v. Kearns,* 43 Conn.App. 265, 682 A.2d 148 (1996) for the proposition that there is a present trend by other states in adopting absolute immunity for even "the act of filing a grievance complaint." Indeed, the Connecticut Court of Appeals in *Field* did address whether the act of filing a bar complaint gives rise to absolute immunity in favor of the complainant, the issue squarely before the Court today. *Id.* However, according to the Connecticut Supreme Court, *Field* is *contrary* to *Rioux v. Barry,* 283 Conn. 338, 927 A.2d 304 n. 6 (2007) ("In *Field,* the court concluded that absolute immunity applied to a vexatious litigation claim. The holding of *Field* is inconsistent with the holding of this opinion.").

In *Rioux,* the Connecticut high court held that the stringent requirements of wrongful use of civil proceedings[4] provid-

---

4. The Connecticut tort in *Rioux* is referred to as vexatious litigation which requires the

same elements as the tort of wrongful use of civil proceedings. *See Rioux,* 927 A.2d 304.

ed enough protection to complainants rendering unnecessary an "additional layer of protection" to "would-be litigants in the form of absolute immunity." *Id.* at 310. The Court's logic surrounded the premise that because the tort had such stringent requirements, there existed adequate room for both appropriate incentives to report wrongdoing and protection of the injured party's interest in being free from unwarranted litigation. *Id.* Thus, because the tort strikes the proper balance, the Connecticut high court found it unnecessary to foreclose those who suffered harm as a result of vexatious litigation. *Id.*

Furthermore, the Connecticut Supreme Court, noted:

> [W]ere we to provide absolute immunity for the communications underlying the tort of vexatious litigation, we would effectively eliminate the tort.... [V]irtually any initiation or procurement of a previous lawsuit would necessarily be part of any judicial proceeding. Thus, the tort of vexatious litigation would virtually always be subject to absolute immunity. Indeed the Restatement of Torts implicitly recognizes this by providing that statements made in the course of a judicial or quasi judicial proceeding are absolutely immune in the context of a defamation suit but *not* in the context of a suit for vexatious litigation. *See* 3 Restatement (Second), Torts Section 587, at 249, comment (a) (1977).

Like the Connecticut Supreme Court, I believe the tort of wrongful use of civil proceedings provides adequate protections to would-be bar complainants and would not have the chilling effect posited by the majority. Rather than adopting an approach that provides bad faith bar complainants with the impenetrable shield of absolute immunity, I would adopt a more tempered approach consistent with our own rules of professional conduct, that of qualified immunity. *See Kentucky Rule*

*Civil Procedure* 11 (requiring attorney to have *good faith* regarding the factual and legal soundness of documents bearing his name); SCR 3.130(8.3)(d) (providing immunity to lawyer acting *in good faith* in the reporting of misconduct); *see also* Comment 5, SCR 3.130(8.3) (explaining that *qualified immunity* applies to attorney's reporting misconduct).

For these reasons, I respectfully dissent from the majority's conclusion that bar complainants enjoy absolute—rather than qualified—immunity from civil liability rightfully arising from the filing of a vexatious and bad-faith bar complaint.

SCHRODER, J., joins.