NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0921n.06

Case No. 13-6565

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Dec 11, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| DAX R. WOMACK, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| MATT CONLEY, Kentucky State Police, In his | ) | DISTRICT OF KENTUCKY |
| Individual and Official Capacity; STEPHANIE | ) | |
| CONLEY, Department for Community Based | ) | |
| Services, In her Individual and Official Capacity; | ) | |
| CONNIE KNIGHT, Individually and as an Agent | ) | O P I N I O N |
| of the Kentucky State Police; ROBERT | ) | |
| SCHOULTZ, Kentucky State Police, In his | ) | |
| Individual and Official Capacity; JASON KIRK, | ) | |
| Kentucky State Police, In his Individual and | ) | |
| Official Capacity; SCOTT INGRAM, Daviess | ) | |
| County Sheriff's Dept., In his Individual and | ) | |
| Official Capacity; DAVID CRAFTON, | ) | |
| Henderson Co. Sheriff's Dept., In his Individual | ) | |
| and Official Capacity, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE:    COLE, Chief Judge; KEITH and BATCHELDER, Circuit Judges.

COLE, Chief Judge.    Dax Womack sued police officer Matt Conley and six other defendants for allegedly framing Womack for buying drugs. Womack claims that the defendants conspired to plant drugs on him during a sting operation and used that false evidence as a basis to search his office, arrest him, and then prosecute him while withholding exculpatory evidence and

falsely testifying during his criminal proceedings. Womack was ultimately acquitted of the criminal charges and then brought this civil suit alleging that the defendants' conduct violated various federal and state laws, including: 42 U.S.C. § 1983 ("Section 1983") for civil conspiracy, supervisory liability, and the violation of his Fourth, Fifth, and Fourteenth Amendment rights, as well as Kentucky state law claims for malicious prosecution and defamation. The district court granted summary judgment to all defendants on all counts, and Womack now appeals. For the reasons set forth below, we affirm.

## I. BACKGROUND

### A. Factual Background

Plaintiff Dax Womack is a criminal defense attorney who has brought various claims related to an alleged conspiracy to frame him for the illegal purchase of prescription drugs. There are seven defendants in this case. Kentucky state police officer Matt Conley led the investigation against Womack and arrested him along with Deputy Scott Ingram of the Daviess County Sheriff's Department. Also integral to the investigation and arrest was Connie Knight, a confidential informant who allegedly sold drugs to Womack and was present during his arrest. Captain Robert Shoultz and Sergeant Jason Kirk were Matt Conley's supervisors during the investigation and, according to Womack, participated in the conspiracy by meeting repeatedly with Matt Conley to plan and discuss his investigation. Deputy David Crafton was Matt Conley's point of contact with the Henderson County Sheriff's Department. Finally, Womack has also brought a defamation claim against Matt Conley's wife, Stephanie Conley, for filing a bar complaint against him and discussing the contents of that complaint with others at her place of work. Womack and Matt Conley crossed paths several times in the years prior to Womack's

arrest, and Womack maintains that because of those interactions Matt Conley and his wife harbored a grudge against him, motivating the Conleys' alleged conspiracy to discredit him.

Womack was representing Knight's son in early 2011. Knight repeatedly came to Womack's law office to discuss her son's case. At some point Womack allegedly suggested that she could secure leniency for her son by purchasing drugs as an informant for the police. Knight brought illegally acquired prescription drugs to Womack's office on at least one occasion, even though Womack never actually made arrangements with the police to use Knight as an informant. Womack threw the drugs away and maintains that he never told her to bring them to his office, while Knight alleges that Womack threw them away because they were not the kind of drugs that he wanted.

Matt Conley became aware of these events after an informant told the local police that Womack was purchasing drugs from Knight. Matt Conley's supervisors Shoultz and Kirk placed him in charge of a Kentucky state police investigation after he interviewed Knight about Womack's alleged drug activities. Matt Conley contacted Crafton several times throughout the investigation, supposedly to determine whether Womack was actually negotiating drug purchases with Crafton's department in an effort to secure a reduced sentence for Knight's son. After confirming that Womack was not working with the police, Matt Conley and Kirk set up a "reverse buy" operation (in which a confidential informant sells drugs to the target of an investigation) with the permission of Shoultz and the assistance of Knight. Matt Conley ultimately gave Knight $300 in cash for her role in this operation.

Knight met Womack in his office on April 8, 2010 while wearing audio and visual recording devices with which Matt Conley had equipped her. At the meeting they discussed her son's case as well as the possibility of Knight helping to reduce her son's sentence by buying

drugs as an informant for the police. Shortly after the initial meeting Womack called Knight back to his office and gave her $50 in cash and permission to drop something off through the mail slot in his door later that evening. Womack maintains that he gave her that money so that she would stop pestering him about her son's case, and that he was not paying full attention when he told her that she could put something through his mail slot but simply wanted to avoid dealing with her in person again. In any event, that evening Knight attempted to call Womack approximately eighteen times to set up another meeting.

The next day, Ingram joined Matt Conley and together they wired Knight with audio and visual recording devices and provided her with drugs for the reverse buy. Knight then drove to Womack's law office while Matt Conley and Ingram followed in their own vehicle. Knight met with Womack in his office where they briefly discussed her son's case before Matt Conley called Knight on her mobile phone. Shortly after the call ended, Matt Conley and Ingram entered the office and peacefully arrested Womack after retrieving the drugs from his desk.

The parties disagree about how the drugs came to be in (or on) Womack's desk. Womack denies that he ever accepted drugs from Knight, saying that she threw the bag onto his desk when he was not paying attention after she recieved the call from Matt Conley who, Womack infers, must have instructed her to do so over the phone. Knight initially contended that she gave the bag of drugs to Womack who then placed them in his desk drawer before she received the call from Matt Conley. On appeal, Knight has simplified her account, stating only that she "delivered the drugs by placing them on Mr. Womack's desk," without any mention of whether he then put them in a drawer. Ingram and Matt Conley both testified that Womack removed the drugs from his middle desk drawer after they entered his office, while Womack maintains that the bag was lying on top of his desk. The audio and visual recordings of the

alleged drug transaction are not clear, though both Womack and the defendants claim that careful examination of these recordings will support their own versions of events.

Sometime after Womack's arrest, Matt Conley's wife, Stephanie Conley (a social worker) filed a bar complaint against Womack alleging misconduct towards some of her clients. Before filing the complaint she showed it to her supervisor in the presence of one of her coworkers. The bar complaint was later dismissed.

## B. Procedural Background

Two charges were initially brought against Womack: possession of a controlled substance in the first degree and possession of a prescription drug not in a proper container. The prosecutor added six additional charges (allegedly at Matt Conley's behest) shortly after Womack issued a subpoena to Stephanie Conley in an unrelated matter. At Womack's preliminary hearing on May 18, 2010, Knight, Ingram, and Matt Conley all gave testimony consistent with their version of the events as described above. Based on his own eyewitness account, Womack asserted that they testified falsely about how the drugs came to be on his desk and where they were found during the arrest. When asked whether Knight received anything in return for her assistance with the investigation, Matt Conley testified that she did not, despite the fact that he actually had paid her $300. He later tried to explain this omission in his deposition by indicating that he was not familiar with the term "exculpatory evidence," had never been instructed that he must "give up exculpatory evidence," and that in any event he did not believe that paying an informant for her assistance in an investigation is a fact that should be disclosed to the defendant. At the conclusion of the preliminary hearing, the court found probable cause for the two original charges against Womack and dismissed the other six that had been added later.

A grand jury indicted Womack on September 22, 2010. Matt Conley testified before the grand jury, and again he denied knowing if Knight had received anything in return for her assistance with the investigation. Matt Conley also denied having any personal animosity towards Womack, which Womack maintains was false. Womack presented testimony that Knight planted the drugs on his desk. At trial, the jury acquitted Womack.

Womack filed this suit on April 1, 2011, alleging numerous federal and state law violations against each defendant. After dismissing a host of claims, the district court narrowed the case to the following causes of action against each defendant:

1) Section 1983: civil conspiracy against all defendants except Stephanie Conley.

2) Section 1983: unreasonable search and seizure against Knight,[1] Ingram, and Matt Conley for entering Womack's office and then arresting him without probable cause in violation of the Fourth Amendment.

3) Section 1983: concealing exculpatory evidence against Shoultz, Kirk, and Matt Conley for, among other things, failing to disclose that Matt Conley had paid Knight for her assistance with the investigation.

4) Section 1983: supervisory liability against Shoultz and Kirk for failing to properly train Matt Conley to disclose exculpatory evidence.

5) Malicious prosecution under Kentucky state law against Matt Conley.

6) Defamation under Kentucky state law against Stephanie Conley for filing a bar complaint against Womack and showing it to at least two others.

---

[1] The district court found that Knight was acting under the color of state law for the purposes of Section 1983 liability due to her participation in the Womack investigation, and she does not dispute this on appeal.

The district court granted all of the defendants' motions for summary judgment on all counts. First, the district court held that the evidence taken as a whole did not support an inference of conspiracy, so it granted summary judgment to all defendants on Womack's Section 1983 civil conspiracy claim. Next the district court found that there was probable cause to believe that Womack had committed a crime, compelling judgment against Womack on his claims for unreasonable search and seizure and withholding exculpatory evidence under Section 1983 and malicious prosecution under Kentucky state law. Turning to Womack's Section 1983 supervisory liability claim against Shoultz and Kirk, the district court granted summary judgment because, though they failed to train Matt Conley properly in his obligation to disclose exculpatory evidence, that failure did not result in a violation of Womack's constitutional rights. Finally, the district court also granted summary judgment to Stephanie Conley on Womack's defamation claim, finding that she had an absolute privilege to file her bar complaint and that that privilege extended to her discussion with her supervisor and a coworker because that discussion was necessary for her to file the privileged complaint. Womack now appeals.

## II. ANALYSIS

"We review a district court's grant of summary judgment de novo." *Guyan Int'l, Inc. v. Prof'l Benefits Adm'rs, Inc.*, 689 F.3d 793, 797 (6th Cir. 2012) (citation omitted). Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In determining whether the defendants met their burden in moving for summary judgment, we view the evidence in the light most favorable to Womack and draw all reasonable inferences in his favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## A. Section 1983 Civil Conspiracy

Womack first challenges the district court's grant of summary judgment against him on his Section 1983 civil conspiracy claim. The standard for proving a civil conspiracy in this circuit is as follows:

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985) (citation omitted). The elements of a civil conspiracy under Section 1983 are "that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed." *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007). Because direct evidence of conspiracy is rarely available, it is enough to produce circumstantial evidence sufficient to reasonably infer the existence of a conspiracy. *See Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (citation omitted).

Womack contends that he has produced sufficient circumstantial evidence to raise a reasonable inference of a conspiracy, including: (1) that there is a disputed issue of material fact concerning how the drugs came to be on his desk, (2) that Matt Conley and the other police defendants appear to have disregarded several Kentucky state police regulations in the course of investigating Womack, (3) that Matt Conley concealed the fact that he paid Knight for her assistance as a confidential informant, and (4) that the six charges dismissed at the preliminary hearing were added to Womack's indictment shortly after he subpoenaed Stephanie Conley. Because these pieces of circumstantial evidence are just as consistent with a legitimate police

investigation as with a conspiracy, we find that the district court did not err in holding that the evidence is insufficient to support an inference of conspiracy. *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (holding that the circumstantial evidence presented failed to establish the existence of a conspiracy because the defendants' "conduct [was] just as consistent with independent conduct as it [was] with a conspiracy").

While the disputed accounts of the drugs' placement in Womack's office may be a genuine dispute of fact, that fact is not material to the outcome of this case. The events leading up to the meeting in Womack's office are entirely consistent with a legitimate police investigation culminating in a reverse buy operation in which Knight would deliver drugs to him. Whether she actually delivered the drugs to Womack by handing them to him or by tossing them onto his desk does not cast the legitimacy of the investigation into doubt.

Womack's other circumstantial evidence similarly fails to support an inference of conspiracy. He points out that Matt Conley and the other defendants did not abide by several Kentucky state police regulations during the course of the reverse buy operation. Most of these infractions appear to be technicalities, such as permitting Knight to drive to the operation without a driver's license. While such procedural irregularities may support an inference of sloppy police work, Womack has not provided any logical bridge from a failure to observe proper procedures to a conspiracy to frame him. So too with the fact that Matt Conley neglected to mention that he had paid Knight when asked about her compensation during Womack's criminal proceedings. Matt Conley's lack of candor does not raise an inference that the entire investigation was actually a conspiracy. Finally, even if Matt Conley influenced the prosecutor to add six charges to Womack's indictment due to some sort of personal animus, this does not

raise the inference of conspiracy because it "is just as consistent with independent conduct as it is with a conspiracy." *See Hensley*, 693 F.3d at 695.

In sum, we affirm the grant of summary judgment against Womack on his Section 1983 civil conspiracy claims because all of the evidence, both direct and circumstantial, is consistent with a legitimate police investigation and therefore does not support an inference of conspiracy.

## B. Probable Cause

Womack next challenges the district court's finding of probable cause in its grant of summary judgment on a number of his claims, including his Section 1983 claims for unreasonable search and seizure and withholding exculpatory evidence and his Kentucky state law claim for malicious prosecution. We affirm the district court's judgment on these claims because there is more than enough evidence to support the district court's finding of probable cause. Several undisputed facts could support a reasonable belief that Womack had committed or would commit the offense by buying drugs, including that: (1) Womack paid Knight $50 while telling her how she should deliver something to him shortly after they discussed the possibility of her purchasing drugs for him; (2) Womack discussed the possibility of buying drugs from Knight and there is no evidence to substantiate his claim that he was doing so on behalf of the police; and (3) Knight testified that she had previously sold drugs to Womack. Taken together, these facts are sufficient to affirm the district court's finding of probable cause.

## C. Section 1983 Supervisory Liability

Womack argues that the district court erred in granting summary judgment to Shoultz and Kirk on his Section 1983 claim for supervisory liability because they participated in the constitutional violations against him. "[A] prerequisite of supervisory liability under § 1983 is unconstitutional conduct by a subordinate of the supervisor." *McQueen v. Beecher Cmty. Schs.*,

433 F.3d 460, 470 (6th Cir. 2006). As discussed in the preceding sections, Womack cannot establish that any of the defendants violated his constitutional rights, so neither can he show that Shoultz or Kirk participated in a violation. Furthermore, any exculpatory evidence Matt Conley withheld that may have been caused by a failure to train —most notably his payment to Knight— was harmless because that evidence would not alter the finding of probable cause or otherwise amount to a constitutional violation. We therefore affirm the district court's grant of summary judgment against Womack on his Section 1983 claim of supervisory liability.

### D. Defamation

Womack has brought a Kentucky state law defamation claim against Stephanie Conley for filing a frivolous bar complaint against him and for discussing the allegedly defamatory contents of that complaint with her supervisor in the presence of another coworker prior to filing the complaint. The district court granted summary judgment to Stephanie Conley on the grounds that she had an absolute privilege to file her bar complaint and that the privilege extended to her discussion with her supervisor and a coworker because that discussion was necessary for her to file the privileged complaint. Womack does not dispute that Stephanie Conley had an absolute privilege to file her bar complaint against him, a privilege recognized by the Kentucky Supreme Court in *Morgan & Pottinger, Attorneys, P.S.C. v. Botts*, 348 S.W.3d 599, 605 (Ky. 2011) ("Accordingly, we hold today that any communication or statement made to the [Kentucky Bar Association] during the course of a disciplinary hearing or investigation, including the contents of the bar complaint initiating such proceedings, are absolutely privileged.").

In *General Electric Co. v. Sargent & Lundy*, 912 F.2d 1119, 1127 (6th Cir. 1990), we held that Kentucky's absolute privilege for communications during a judicial proceeding also extends to communications preliminary to that proceeding. The Kentucky Supreme Court's

holding in *Morgan* specifically applied *Sargent & Lundy* to extend Kentucky's judicial statements privilege to bar complaints. *See* 348 S.W.3d at 602. *Morgan* held that "any statement made preliminary to, in the institution of, or during the course of an attorney disciplinary proceeding will be privileged so long as it is material, pertinent, and relevant to such proceeding." *Id.*

Womack questions whether Stephanie Conley's discussion of the bar complaint with her supervisor in the presence of a coworker was material, pertinent, and relevant to the proceeding because he says that she "had no purpose in sharing this information aside from defaming Womack." But in her deposition Stephanie Conley testified that she showed her bar complaint to her supervisor only because it mentioned her employment as a social worker and she wanted to make sure that her supervisor knew what she was doing "in case there was an issue with a social worker filing a complaint." She also denied discussing the contents of her bar complaint in the presence of her coworker. It appears that Stephanie Conley discussed her bar complaint with others only to the extent she believed that showing that complaint to her supervisor was a necessary preamble to filing it. Because statements that are reasonably believed to be necessary to the filing of an attorney disciplinary proceeding would ordinarily qualify for absolute immunity under *Morgan* as "material, pertinent, and relevant to such proceeding," we affirm the district court's grant of summary judgment to Stephanie Conley on Womack's defamation claim against her.

### III. CONCLUSION

For the foregoing reasons, we affirm the district court's judgment.